1279

EMPLOYERS INSURANCE OF WAUSAU, Respondent v. CONSTRUC-TION MANAGEMENT ENGINEERS OF FLORIDA, INC., and L. B. Samford, Inc., Defendants, of whom Construction Management Engineers of Florida, Inc. is Appellant.

(377 S. E. (2d) 119)

Court of Appeals

*Charles E. Hill*, of *Turner, Padget, Graham & Laney*, Columbia, *for appellant.*

*John J. McKay, Jr.* of *McKay & Mullen*, Hilton Head Island, and *John V. Burch* of *Bovis, Kyle & Burch*, Atlanta, Ga., *for respondent.*

Heard Dec. 13, 1988.

Decided Jan. 23, 1989.

CURETON, Judge:

Employers Insurance of Wausau brought a declaratory judgment action seeking to be relieved of its obligations under a subcontract performance bond issued in favor of Construction Management Engineers of Florida, Inc. (CME). L. B. Samford Inc. was the principal under the bond. The trial court granted summary judgment to Wausau and discharged it from any liability under the bond. CME appeals. We affirm.

Summary judgment should be granted when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *United States Leasing Corp. v. Janicare, Inc.*, 294 S. C. 312, 364 S. E.

(2d) 202 (Ct. App. 1988). The court must construe all ambiguities, conclusions, and inferences arising in and from the evidence most strongly against the moving party. *Butts v. AVX Corp.*, 292 S. C. 256, 355 S. E. (2d) 876 (Ct. App. 1987).

In February of 1983, CME was awarded a construction contract with the United States Navy for a recruit depot at Parris Island, South Carolina. The contract amount was approximately $6.4 million. CME was required to provide the Navy with a bond under the Miller Act. CME obtained a bond for the general contract from Fidelity & Deposit Company of Maryland. As a condition, CME was required to have all of its subcontractors bonded. The record indicates CME entered into a number of bonded subcontracts with specialty subcontractors.

On March 6, 1983, CME executed a subcontract with Samford. The subcontract was for approximately $2.3 million and required Samford to perform all work of every nature for the complete project except general management of the project and twelve specific areas of construction. The March 6 subcontract required Samford to obtain a payment and performance bond in CME's favor for $2.3 million. This bond was obtained from Wausau and is the matter in controversy. On March 7, 1983, a second contract was executed by Samford and CME. This contract required Samford to perform "all work of every nature for the complete project." As compensation, CME agreed to pay Samford "ninety-seven percent (97%) of the final contract amount; less any amounts requested by Subcontractor [Samford] to be paid directly to any other Subcontractors or suppliers for this project only." The contract stated its original amount was approximately $6.2 million. The March 7 contract contained a section which stated the contract superseded any prior agreements or proposals. Wausau was not aware of the March 7 contract until Samford defaulted on the project and CME called upon Wausau to perform under the bond. Wausau refused and brought this action. The trial court granted summary judgment to Wausau holding as a matter of law that Wausau was discharged from its liability under the bond because the March 7 contract superseded the March 6 contract and also because the risk of Wausau was changed from $2.3 million to $6.2 million.

CME asserts there are issues of fact about the two contracts which make summary judgment inappropriate. CME argues the March 7 contract was a "wraparound" contract which did not substantially change the obligation of Samford. CME also claims there is a question as to whether the March 7 contract was actually executed first in time. These arguments are not persuasive. The two contracts are clear. In construing and determining the effect of a written contract, the parties' intention and the meaning are gathered from the document itself. When the language of the contract is clear and unequivocal its meaning must be determined by its contents alone. The language determines the full force and effect of the document when it is perfectly plain and capable of legal construction. *Gilstrap v. Culpepper*, 283 S. C. 83, 320 S. E. (2d) 445 (1984) (extrinsic evidence giving the contract a different meaning from that indicated by its plain terms is inadmissible); *Beard v. Ryder/P-I-E Nationwide, Inc.*, 292 S. C. 250, 355 S. E. (2d) 872 (Ct. App. 1987).

CME admitted the Wausau bond was obtained to cover work to be performed under the March 6 contract. There is nothing on the face of that March 6 contract to indicate it was not executed on the date. The same is true for the March 7 agreement. That agreement was specifically amended by Samford and CME in certain respects but there is no amendment striking the supersession clause. We reject the argument this language in the March 7 contract was mere "boilerplate" or "fine print." It was a part of a written contract signed by entities engaged for a number of years in the construction industry. The March 7 contract clearly stated it superseded any prior agreements or proposals.

A surety's obligation is contractual and cannot extend beyond the terms of the bond and the intent of the parties thereto. *S. C. Public Service Comm. v. Colonial Const. Co.*, 274 S. C. 581, 266 S. E. (2d) 76 (1980). When an agreement is incorporated into a bond so as to become a part of it the two are construed together as a whole to ascertain the intent of the parties. *Id.* If language used by a bond is plain and unambiguous the bond should be interpreted like any other contract to determine the intention of the parties. *SOCAR, Inc. v. St. Paul Fire and Marine Ins. Co.*, 288 S. C.

287, 341 S. E. (2d) 822 (Ct. App. 1986).

The trial court also held the change in risk under the March 7 contract discharged Wausau as a matter of law. CME argues the trial court misconstrued the March 7 contract as a $6.2 million contract when actually it was for substantially less because CME paid other subcontractors directly and these funds were not directed through Samford. However, the contract on its face obligated Samford to perform all work of every nature for the complete project.[1] Samford was ultimately responsible under the language of the contract. This is a substantial modification of the March 6 contract which only required Samford to perform certain specified work.

CME further argues Wausau should be estopped from denying liability under the bond because it had a duty to investigate the circumstances behind the March 6 contract. CME presumably takes the position an investigation by Wausau would have revealed the March 7 contract. The record indicates Wausau returned the bond premium and applied it to Samford's account. The only contract presented to Wausau was the March 6 document which appeared to be a valid subcontract. There is no evidence in the record Wausau had reason to be aware of the March 7 contract until after default by Samford. We fail to perceive any circumstances in the record which would impose a duty to investigate on Wausau.

CME finally asserts the trial court erred in granting summary judgment to Wausau because other subcontractors and material suppliers may be affected by the discharge of Wausau from liability under the bond. The trial court's order does not address this issue. However, the record of the hearing indicates and Wausau reaffirmed in its appellate brief that it took the position this action would not affect the rights of third party materialmen and claimants. We find no error on this ground.

CME's remaining exceptions relate to the inclusion of material in the appellate record. We have considered them

---

[1] We recognize that $2.5 million of the $6.2 million contract had been subcontracted and bonded. Nevertheless, Samford assumed the risk of nonperformance of these subcontracts.

and find they are not meritorious and not dispositive of the merits of the case. We dispose of them under provisions of Section 14-8-250, Code of Laws of South Carolina, 1976, as amended.

Affirmed.

SHAW and BELL, JJ., concur.

