**CARRIAGE TOWN, INC., Plaintiff,**

v.

**LANDCO, INC. and Jack W. Friar, Defendants.**

No. CIV.A. 4:95–3366–21.

United States District Court,
D. South Carolina,
Florence Division.

Jan. 20, 1998.

Wm. Reynolds Williams, Florence, SC, for Plaintiff.

L. Franklin Elmore, Mason A. Goldsmith, Greenville, SC, for Intervenor.

R. Wayne Byrd, David W. Keller, Jr., Jeffrey L. Payne, Florence, SC, for Defendants.

## ORDER

TRAXLER, District Judge.

Defendants LandCo, Inc. and Jack W. Friar move, pursuant to the permanent injunction entered by this court on February 25, 1997, for payment of the proceeds of a surety bond issued by Reliance National Indemnity Company ("Reliance"), an intervenor in this action. Additionally, Defendants seek—also pursuant to the permanent injunction—to repossess their rolling stock and kitchen equipment. As set forth below, the court denies Defendants' motion for payment of the bond proceeds. The court, however, grants without opposition Defendants' motion that Carriage Town return Defendants' rolling stock and kitchen equipment.

### I.

The material facts are not a matter of serious contention. This dispute springs from a lease-purchase agreement between Defendants and Plaintiff Carriage Town, Inc. ("Carriage Town"). Under the terms of the contract, Defendants agreed to lease their sandwich production and distribution business to Carriage Town which was, in turn, required to pay monthly installments and various expenses related to the business. The agreement included a "Non–Competition Covenant" prohibiting Defendants from soliciting their former employees or otherwise competing with Carriage Town during the time that the agreement was effective. The non-compete clause did not apply, however, in the event Carriage Town defaulted on its payments under the lease-purchase agreement and failed to cure the default within 90 days. Eventually, Carriage Town failed to make a scheduled lease payment. Prior to the expiration of the 90–day cure period, Defendants hired some of Carriage Town's employees, seized Carriage Town's vehicles and began competing with Carriage Town in violation of the lease-purchase agreement. Consequently, Carriage Town initiated this action, seeking injunctive as well as other relief based on Defendants' conduct.

On November 11, 1995, having concluded that Defendants violated the non-compete clause of the lease-purchase agreement and that Carriage Town had until November 20, 1995, to cure its default, the court entered a preliminary injunction against Defendants enjoining them from contacting Carriage Town's customers, soliciting their employees, appropriating their vehicles or otherwise competing with Carriage Town. In order to guard against the effects of a wrongfully issued preliminary injunction, the court ordered that Carriage Town post a bond with a corporate surety in the amount of $250,000 which would remain in effect until "further order of the court."

Shortly after the entry of the preliminary injunction, Reliance agreed to post a surety bond on behalf of Carriage Town in the amount of $250,000 "for payment of such sum as may, for any cause, be recovered against [Carriage Town], as a result of this stay being issued."

After engaging in a period of discovery, Carriage Town and Defendants reached a settlement, pursuant to which the parties amended the terms of the lease-purchase agreement to allow only 10 days for Carriage Town to cure a late payment. The amended lease-purchase agreement also contained a liquidated damages provision allowing Defendants to collect $100,000 from the surety bond posted by Reliance in the event of a default by Carriage Town. It is undisputed that neither Carriage Town nor Defendants notified Reliance of the amended lease-purchase agreement or any of its provisions.

As part of their settlement, the parties also jointly proposed that this court enter a permanent injunction to "assure" compliance by both parties with the terms of the amended agreement. Accordingly, the court, with the consent of the parties, entered a permanent injunction on February 25, 1997. Like the preliminary injunction, the permanent injunction prohibits Defendants from competing with Carriage Town, contacting its customers, soliciting its employees, appropriating its vehicles or otherwise interfering with Carriage Town's operation of the sandwich business. But, unlike the preliminary injunction, the permanent injunction directs that, should Carriage Town breach its payment obligations under the amended lease-purchase agreement, De-

fendants are entitled to recover liquidated damages in the amount of $100,000. It further instructs that the bond undertaking posted by Reliance as a result of the preliminary injunction "shall continue in force and effect as surety for the payment of those liquidated damages." Reliance was not provided notice of the permanent injunction entered by and with the consent of the parties.

On April 28, 1997, Defendants moved pursuant to the court's permanent injunction of February 25, 1997, for payment of $100,000 in liquidated damages, contending that Carriage Town failed to make its April 1997 payment. Defendants sought to recover this amount from the proceeds of the bond posted by Reliance.[1] Reliance subsequently received notice of Defendants' request that the court order payment of the liquidated damages from the proceeds of its bond undertaking and moved to intervene as a party in the litigation. *See* Fed.R.Civ.P. 24(a). The court granted the motion, and Reliance filed its opposition to Defendants' motion for payment.

## II.

Reliance contends that Defendants' motion for payment from the bond proceeds should be denied for two related reasons. First, Reliance argues that the parties amended Carriage Town's obligations under the lease-purchase agreement and presented to the court a consent injunction order materially different from the preliminary injunction, significantly increasing the risk insured by Reliance. Because these changes occurred without the knowledge or consent of Reliance, the argument goes, Reliance is discharged from its obligations under the bond. Second, Reliance contends that the damages sought by Defendants are not covered by the terms of the bond issued by Reliance. The court agrees with both arguments and denies Defendants' motion to collect proceeds from the bond undertaking issued by Reliance.

1. One day prior to Defendants' filing this motion, Carriage Town filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. Accordingly, Carriage Town initially opposed this motion on the grounds that it would violate the stay provisions of the Bankruptcy Code. Carriage Town also contended that Defendants' were not enti-

## A.

Preliminarily, there appears to be no dispute between the parties that South Carolina law governs the resolution of this dispute; accordingly, the court applies South Carolina law. A surety's obligation pursuant to a bond is "contractual in nature, [and] 'cannot extend beyond the terms of the bond and the intent of the parties thereto.'" *SO-CAR, Inc. v. St. Paul Fire & Marine Ins. Co.*, 288 S.C. 287, 341 S.E.2d 822, 823 (1986) (quoting *South Carolina Public Serv. Comm'n v. Colonial Constr. Co.*, 274 S.C. 581, 266 S.E.2d 76, 77 (S.C.1980)). Thus, "[i]f language used by a bond is plain and unambiguous the bond should be interpreted like any other contract to determine the intention of the parties," *Employers Ins. of Wausau, v. Construction Management Engineers of Fla., Inc.*, 297 S.C. 354, 377 S.E.2d 119, 121 (1989), and a court may not by order expand a surety's "liability beyond the terms of the bond and the intent of the parties," *S.C. Public Serv. Comm'n*, 266 S.E.2d at 78. Moreover, an alteration of the underlying risk assumed by the surety will discharge the surety from its obligations under the bond where the surety does not receive notice or consent to the additional risk. *See Employers Ins. of Wausau*, 377 S.E.2d at 122; *see also United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1386 (9th Cir.1986) (holding that surety is not liable when the parties, without the surety's knowledge or approval, amend the underlying agreement in such a way as to convert it into a substantially different agreement).

Reliance urges the court to conclude that the parties substantially increased the risk to Reliance in amending the lease-purchase agreement. The court agrees. Here, the unambiguous terms of the bond undertaking signed by Reliance obligated it to pay "such sum as may, for any cause, be recovered against [Carriage Town], as a result of

tled to payment from the bond proceeds because the notice of default was defective. Defendants were subsequently granted relief from the stay, and Carriage Town, which was represented by counsel at the hearing on this motion, eventually withdrew its remaining opposition to Defendants' motion.

*this stay* being issued." (Emphasis added). "This stay" unquestionably refers to the court's preliminary injunction—which stayed Defendants from competing against Carriage Town until the 90–day cure period had expired, *i.e.,* it enforced the terms of the original lease-purchase agreement. Accordingly, Reliance issued its bond in view of the generous 90–day cure period contained in the original lease-purchase agreement. The amended terms, however, cut the cure period to a more onerous ten days, clearly altering the conditions that served as part of the foundation for Reliance's initial risk analysis. Furthermore, the amended lease agreement provided a liquidated damages provision requiring the automatic payment of $100,000 in the event of a default by Carriage Town under the significantly shorter cure period. Under the terms of the bond, which was required for the protection of Defendants in case they had been wrongfully enjoined, see Fed.R.Civ.P. 65(c), Defendants would have been obligated to demonstrate what damages, if any, resulted from the wrongful issuance of the preliminary injunction. Coupled with the shorter cure period, the inclusion of a liquidated damages provision, of course, created the likely possibility that Reliance would have to pay a significant amount. The court concludes as a matter of law that the amendments agreed to by the parties significantly impacted the risk undertaken by Reliance. Since Reliance was provided no notice of these changes, it is discharged from its obligation to pay the proceeds of the bond.

Carriage Town responds that Reliance's total exposure is much less as a result of the amended lease-purchase agreement. Whether or not this is true, however, is not dispositive: a bond is contractual in nature and requires the assent of the parties. It is undisputed that Reliance was not informed of the new lease provisions and had no opportunity to reassess the risks associated with

continuing its bond. In no sense can it be said that Reliance consented to continuing the bond in light of the changed circumstances.[2]

Focusing largely on the language of the permanent injunction, Carriage Town argues that "[t]he court specifically required the Bond previously filed with the court to continue in force and effect during the duration of the Permanent Injunction."[3] Indeed, the permanent injunction purports to do so. This court, however, is not empowered to order Reliance to extend the scope of its bond undertaking to cover materially different facts and circumstances any more than it is permitted to rewrite a contract or force litigants to assent to terms that differ from the original terms of their contract. *See, e.g., S.C. Public Serv. Comm'n,* 266 S.E.2d at 78. For purposes of this motion, therefore, the critical question is whether Reliance *agreed* to underwrite the additional risk created by the amended lease terms and the directives of the permanent injunction. Having received no notice, Reliance clearly did not.

**B.**

■ For the reasons set forth above, the court also agrees with the alternative argument advanced by Reliance that the damages Defendants seek do not come within the ambit of the preliminary injunction bond. Under its plain terms, the bond was issued to cover damages resulting from the issuance of *"this* stay," *i.e.,* the issuance of the preliminary injunction. Clearly, Reliance did not commit to insuring losses connected with a subsequent injunction. The court suspects that had that been the intention of Reliance, it would have used the phrase "this *action"* or a similarly broad term. The court is mindful of Defendants' suggestion that the permanent injunction is merely a "continuation" of the preliminary injunction, but finds

**2.** Defendants seem to suggest that Reliance's total *exposure* is coterminous with the *risk* it assumed and, therefore, Reliance suffered no prejudice from the amended terms and should be made to honor the bond. The court cannot agree. It may well be that Reliance would have willingly agreed to a large amount of exposure where the chances of paying out were very small, whereas it would not so readily agree to a

smaller amount of exposure where it was more likely that payment would be mandatory.

**3.** The court notes that the permanent injunction was prepared by the parties and presented jointly to the court following the parties' settlement of this action. The court presumed Reliance's consent had been obtained.

this characterization disingenuous. In the court's view, it is clear that the permanent injunction, which effectively incorporates by reference the amended terms of the lease-purchase agreement, presents increased risks which Reliance had no opportunity to evaluate. Consequently, the court concludes that the liquidated damages sought by Defendants as a result of Carriage Town's breach of the amended lease-purchase agreement are not covered by Reliance's bond.

### III.

In sum, Reliance was not notified of the amendments to the lease-purchase agreement. Thus, because the damages sought by Defendants do not come within the scope of the preliminary injunction bond issued by Reliance, and because the amendments to the lease-purchase agreement increase Reliance's risk, Reliance is discharged from its obligation under the bond and is not liable on Defendants' claim for liquidated damages.

**THEREFORE, IT IS ORDERED** that Defendants' motion for payment from the proceeds of the bond posted by Reliance is denied. Defendants' motion to repossess its rolling stock and kitchen equipment is granted without opposition.