PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NATIONAL CITY BANK OF INDIANA;
NATIONAL CITY MORTGAGE COMPANY;
FIRST FRANKLIN FINANCIAL
CORPORATION,

*Plaintiffs-Appellees,*

v.

CHARLES W. TURNBAUGH, in his
official capacity as Commissioner
of Financial Regulation, Maryland
Department of Labor, Licensing and
Regulation,

*Defendant-Appellant.*

THE STATES OF ALASKA; ARIZONA;
ARKANSAS; COLORADO; CONNECTICUT;
DELAWARE; FLORIDA; HAWAII; IDAHO;
ILLINOIS; IOWA; KANSAS; KENTUCKY;
LOUISIANA; MAINE; MASSACHUSETTS;
MICHIGAN; MINNESOTA; MISSISSIPPI;
MISSOURI; MONTANA; NEVADA; NEW
HAMPSHIRE; NEW JERSEY; NEW YORK;
NORTH CAROLINA; NORTH DAKOTA;
OKLAHOMA; OREGON; PENNSYLVANIA;
SOUTH CAROLINA; SOUTH DAKOTA;
TENNESSEE; TEXAS; VERMONT;
WASHINGTON; WEST VIRGINIA;
WISCONSIN; WYOMING; THE
DISTRICT OF COLUMBIA,

*Amici Supporting Appellant,*

No. 05-1647

THE OFFICE OF THE
COMPTROLLER OF THE CURRENCY,
  *Amicus Supporting Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-04-2719-CCB)

Argued: May 25, 2006

Decided: August 10, 2006

Before WIDENER and DUNCAN, Circuit Judges,
and Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Goodwin wrote the opinion, in
which Judge Widener and Judge Duncan joined.

## COUNSEL

**ARGUED:** Jonathan R. Krasnoff, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Balti-
more, Maryland, for Appellant. Robert Allen Long, Jr., COVING-
TON & BURLING, Washington, D.C., for Appellees. Douglas
Bradford Jordan, OFFICE OF THE COMPTROLLER OF THE CUR-
RENCY, Washington, D.C., for Amicus Supporting Appellees. **ON
BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Steven
M. Sullivan, Solicitor General, Thomas L. Gounaris, Assistant Attor-
ney General, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Baltimore, Maryland, for Appellant. Stuart C. Stock,
Keith A. Noreika, Benjamin C. Block, COVINGTON & BURLING,
Washington, D.C., for Appellees. Roy Cooper, Attorney General of

North Carolina, Philip A. Lehman, Assistant Attorney General, Consumer Protection Division, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina; Thomas J. Miller, Attorney General of Iowa, William L. Brauch, Special Assistant Attorney General, Consumer Protection Division, IOWA ATTORNEY GENERAL'S OFFICE, Des Moines, Iowa, for Amici Supporting Appellant. Julie L. Williams, Daniel P. Stipano, Horace G. Sneed, OFFICE OF THE COMPTROLLER OF THE CURRENCY, Washington, D.C., for Amicus Supporting Appellees.

## OPINION

GOODWIN, District Judge:

The issue before us is whether the National Banking Act ("NBA"), 12 U.S.C. §§ 21-216 (2000), and regulations of the Office of the Comptroller of the Currency ("OCC") preempt Maryland laws requiring the State's Commissioner of Financial Regulation ("Commissioner") to exercise certain powers over operating subsidiaries of a national bank. We agree with the district court that the Maryland laws are preempted and affirm.

### I.

This dispute arose when the Commissioner, acting pursuant to Maryland law, attempted to exercise visitorial powers and to limit prepayment penalties on adjustable rate mortgage ("ARM") loans originated by operating subsidiaries of a national bank.[1]

National City Bank of Indiana wholly owns and operates National City Mortgage Company and First Franklin Financial Corporation as

---

[1]Maryland law requires the operating subsidiaries to submit to the Commissioner's visitorial powers, Md. Code Ann., Fin. Inst. §§ 11-504 to -515 (West 2006), and establishes a prepayment restriction on ARM loans, *Id.*, Com. Law § 12-105(b). "Visitation" includes examination of bank records, regulation and supervision of banking activities, and enforcement of laws. 12 C.F.R. § 7.4000(a)(2) (2006).

operating subsidiaries. National City Mortgage and First Franklin both previously engaged in residential lending in Maryland.[2]

The Maryland Mortgage Lender Law ("MMLL"), Md. Code Ann., Fin. Inst. §§ 11-501 to -524 (West 2006), enacted in 1989, provides Maryland's regulatory framework for residential lending. The MMLL grants the Commissioner the authority to exercise visitorial powers over mortgage lenders and to adopt rules and regulations to carry out the provisions of the MMLL. *Id.* §§ 11-503 to -515. In a separate statute, Maryland law gives the Commissioner authority to restrict prepayment penalties on ARM loans. *Id.*, Com. Law § 12-105(b).

In June and July 2004, two consumers filed complaints with the Commissioner contesting prepayment penalties assessed by First Franklin. After the Commissioner notified First Franklin of the complaints, National City Bank and its operating subsidiaries filed an action for declaratory and injunctive relief to prevent the Commissioner's enforcement. The bank claimed that the regulations promulgated by the OCC under the NBA exempt the bank's wholly-owned subsidiaries, to the same extent that it exempts the bank itself, from state regulation of its banking activities. Because the OCC regulations are valid exercises of the agency's congressionally delegated authority, the bank argued, they preempt the conflicting Maryland law. The parties filed cross-motions for summary judgment. The district court granted the plaintiffs' summary judgment motion, denied the defendant's motion, and permanently enjoined the Commissioner from enforcing the Maryland laws against the operating subsidiaries.

II.

We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmoving party. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). A moving

---

[2]Neither operating subsidiary presently originates mortgage loans in Maryland. The district court correctly ruled, however, that the case is not moot because the Commissioner still seeks to exert visitorial authority over First Franklin and National City Mortgage for mortgage loans they originated previously, and the Commissioner may attempt to exercise visitorial authority over other National City Bank operating subsidiaries.

party is entitled to summary judgment if the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The parties agree that this case involves only legal issues and that there are no disputed facts.

### III.

We first summarize the relevant federal statutory and regulatory framework and then consider preemption.

### A.

Congress enacted the NBA in 1864 "to facilitate . . . a 'national banking system.'" *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314-15 (1978) (quoting Cong. Globe, 38th Cong., 1st Sess., 1451 (1864)). In relevant part, the NBA establishes nationally chartered banks and vests these banks with certain powers. 12 U.S.C. § 24.

The OCC has the "primary responsibility for surveillance of the 'business of banking' authorized by [the NBA]." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995). To carry out this responsibility, the OCC promulgates regulations and defines the "'incidental powers' of national banks beyond those specifically enumerated in the statute." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 312 (2d Cir. 2005); *see also* 12 U.S.C. § 93a (authorizing the OCC "to prescribe rules and regulations to carry out the responsibilities of the office").

Our analysis focuses on three federal statutes and the regulations issued by the OCC to enforce them. First, Congress gives national banks general authority to "exercise all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24. In furtherance of this statute, the OCC allows national banks to conduct "business of banking" activities through operating subsidiaries. 12 C.F.R. § 5.34(e)(1).

Second, Congress specifies that national banks may engage in residential lending as regulated by the OCC. 12 U.S.C. § 371(a). Under

this section, the OCC provides that national banks and subsidiaries may deal in ARM loans "without regard to any State law limitations on those activities." 12 C.F.R. § 34.21(a). The OCC also provides that "[a] national bank offering or purchasing ARM loans may impose fees for prepayments notwithstanding any State law limitations to the contrary." *Id.* § 34.23.

Third, "No national bank shall be subject to any visitorial powers except as authorized by federal law . . . ." 12 U.S.C. § 484(a). Pursuant to this section and other sections, the OCC issued 12 C.F.R. § 7.4006, which states, "Unless otherwise provided by Federal law or OCC regulation, State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank."

## B.

When the federal government acts within the scope of its authority, federal law preempts inconsistent state law. *M'Culloch v. Maryland*, 17 U.S. 316, 436 (1819).[3] To determine whether preemption exists, courts look to congressional intent. *Fid. Fed. Sav. & Loan Assoc. v. de la Cuesta*, 458 U.S. 141, 152 (1982). Preemption "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

The Commissioner contends the OCC exceeded its delegated authority by promulgating regulations that limit a state's power to regulate national banks' operating subsidiaries. The Commissioner claims that a presumption against preemption exists and therefore the OCC's regulations do not preempt the Maryland laws. The district court found that a presumption against preemption does not exist, the Maryland statutes conflict with federal law, and the regulations are entitled to *Chevron* deference.[4] The district court accordingly found that federal law preempts the Maryland statutes. We agree.

---

[3]"Federal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav.& Loan Ass'n. v. de la Cuesta*, 458 U.S. 141, 153 (1982).

[4]The district court also applied a separate analysis that considered only the reasoning and holding of *de la Cuesta*. The court concluded the regulations were valid under either analysis.

1.

The Commissioner claims that the extensive history of state regulation of non-bank, state-chartered mortgage subsidiaries creates a presumption against preemption. Courts generally apply a presumption against preemption in fields the states traditionally regulate. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). However, "an 'assumption' of nonpre-emption is not triggered when [a] State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000) (citing *Rice*, 331 U.S. at 230). The regulation of federally chartered banks is indisputably such an area. *Wachovia Bank, N.A. v. Watters*, 431 F.3d 556, 560 n.3 (6th Cir. 2005); *Bank of Am. v. San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) ("Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*, . . . creating an extensive federal statutory and regulatory scheme."). Further, the "grants of both enumerated and incidental powers to national banks" are "not normally limited by, but rather *ordinarily pre-empt*[ ], contrary state law." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32 (1996) (emphasis added). The pertinent regulations define the scope of the national banks' authority to conduct business through operating subsidiaries; undoubtedly these issues involve the "incidental powers" of national banks. A presumption against preemption, therefore, does not exist.

2.

We now turn to whether conflict preemption exists. Our first step in a conflict preemption analysis is to determine whether a conflict exists between the federal and state laws. *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005) (explaining that conflict preemption exists when a state law conflicts with federal law). The parties agree that the Maryland banking laws conflict with the OCC regulations. This case therefore involves conflict preemption unless the OCC "exceeded its authority or acted arbitrarily." *See de la Cuesta*, 458 U.S. at 153-54 (finding an administrator's "judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily").

3.

The framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), determines whether the OCC exceeded its authority or acted arbitrarily. *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 958 (9th Cir. 2005); *Wachovia Bank v. Burke*, 414 F.3d at 315; *Wachovia Bank v. Watters*, 431 F.3d at 560.

Two questions control the *Chevron* analysis. First, "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If Congress's intent is clear, "that is the end of the matter. . . . [But] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 842-43. If there is ambiguity, we "give great weight to any reasonable construction" of the statute. *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 403 (1987).

i.

Congress has not spoken directly about whether the OCC has the authority to regulate operating subsidiaries. The Commissioner claims Congress's omission of references to "non-bank state-chartered" entities in the NBA is evidence that regulation of operating subsidiaries is beyond the scope of the OCC's authority. The Ninth Circuit in *Wells Fargo* succinctly explains why the Commissioner's argument fails:

> While this silence might have been significant to the court were it to interpret the statute *de novo*, it does not answer the question asked by the first step of *Chevron*—namely, whether Congress has "unambiguously expressed [its] intent." We agree. The absence of any reference to operating subsidiaries in the Bank Act does not unambiguously provide that national banks may not create and perform banking functions through such entities.

*Wells Fargo*, 419 F.3d at 959 n.12 (quoting *Wachovia Bank, N.A. v. Burke*, 319 F. Supp. 2d 275, 285 n.5 (D. Conn. 2004)). We agree with the Ninth Circuit.

ii.

We next ask whether the OCC's regulations are based on a permissible construction of the NBA. *Chevron*, 467 U.S. at 843. If the OCC's interpretation is reasonable, we defer to its construction of the statute. *Id.* at 844-45.

The Commissioner principally contends the OCC's regulations are unreasonable interpretations of the NBA. As explained, the NBA is silent on whether the OCC may regulate national banks' operating subsidiaries. When statutes are silent, "agencies [generally] have authority to fill gaps." *Nat'l Cable & Telecomm. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 339 (2002). Further, in cases of statutory silence, we "must defer, under *Chevron*, to [an agency's interpretation of its governing statute], so long as that interpretation is permissible in light of the statutory text and reasonable." *Ohio Valley Envtl. Coal. v. Bulen*, 429 F.3d 493, 498 (4th Cir. 2005).

The NBA allows national banks to "exercise . . . all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 Seventh. The Supreme Court explains the "'business of banking' is not limited to the enumerated powers in § 24 Seventh and that the Comptroller therefore has discretion to authorize activities beyond those specifically enumerated." *NationsBank of N.C.*, 513 U.S. at 258 n.2. However, "[t]he exercise of the Comptroller's discretion . . . must be kept within reasonable bounds. Ventures distant from dealing in financial investment instruments—for example, operating a general travel agency—may not exceed those bounds." *Id.*

We find the OCC's regulation of operating subsidiaries does not exceed the limitations contemplated in *NationsBank*. "Allowing national banks to create, control, and delegate banking functions to operating subsidiaries provides some assistance to banks in performing their authorized activities." *Wells Fargo*, 419 F.3d at 960. Further, 12 C.F.R. § 5.34 limits the activities national banks can conduct through operating subsidiaries to those activities that are authorized by the NBA. *See* 12 C.F.R. § 5.34(e)(3) ("An operating subsidiary conducts activities authorized under this section pursuant to the same authorization, terms and conditions that apply to the conduct of such activities by its parent national bank."). With these principles in mind,

we find that the OCC's interpretation of 12 U.S.C. § 24 Seventh is reasonable and therefore is permissible.

We also find that 12 C.F.R. § 7.4006, which provides that state laws must apply to operating subsidiaries to the same extent that state laws apply to parent national banks, is reasonable and within the OCC's delegated authority. If state law applied to operating subsidiaries to a greater extent than it applied to their parent national banks, it would frustrate national banks' right to conduct the "business of banking" through operating subsidiaries. The OCC's reasoning behind the regulation is compelling:

> When national banks are unable to operate under uniform, consistent, and predictable standards, their business suffers, which negatively affects their safety and soundness. The application of multiple, often unpredictable, different state or local restrictions and requirements prevents them from operating in the manner authorized under Federal law, is costly and burdensome, interferes with their ability to plan their business and manage their risks, and subjects them to uncertain liabilities and potential exposure. In some cases, this deters them from making certain products available in certain jurisdictions.

> The OCC therefore is issuing this final rule in furtherance of its responsibility to enable national banks to operate to the full extent of their powers under Federal law, without interference from inconsistent state laws, consistent with the national character of the national banking system, and in furtherance of their safe and sound operations.

Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904 (Jan. 13, 2004); *see also Wachovia Bank v. Burke*, 414 F.3d at 320-21 (quoting the same). We adopt this reasoning.

Accordingly, we find that the federal regulations at issue are reasonable interpretations of the NBA and are entitled to *Chevron* deference.

## IV.

We join the Second, Sixth, and Ninth Circuits in finding the OCC did not exceed its delegated authority. *Wachovia Bank v. Burke*, 414 F.3d at 318-21; *Wachovia Bank v. Watters*, 431 F.3d at 562-63; *Wells Fargo*, 419 F.3d at 961-62. Accordingly, we affirm the district court's grant of summary judgment to the plaintiffs/appellees.

*AFFIRMED*