**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-2391**

---

THOMAS R. SPENCER; CURTIS SPENCER,

Plaintiffs - Appellees,

v.

FRONTIER INSURANCE COMPANY,

Defendant - Appellant.

---

**No. 06-1551**

---

CURTIS SPENCER, individually, and as Trustee of the Thomas R. Spencer Trust,

Plaintiff - Appellee,

v.

FRONTIER INSURANCE COMPANY,

Defendant - Appellant.

---

Appeals from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., Chief District Judge. (CA-02-3431; 3:02-cv-03431-JFA)

---

Argued: May 13, 2008              Decided: August 26, 2008

---

Before WILLIAMS, Chief Judge, Joseph R. GOODWIN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation, and Claude M. HILTON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

―――――――――――

Affirmed by unpublished per curiam opinion.

―――――――――――

**ARGUED:** Clifford F. Altekruse, SMITH, CURRIE & HANCOCK, LLP, Atlanta, Georgia, for Appellant. David C. Holler, LEE, ERTER, WILSON, JAMES, HOLLER & SMITH, LLC, Sumter, South Carolina, for Appellees. **ON BRIEF:** John E. Menechino, Jr., SMITH, CURRIE & HANCOCK, LLP, Atlanta, Georgia, for Appellant.

―――――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Curtis Spencer, individually and as trustee of his father's trust, brought suit against Frontier Insurance Company (Frontier) seeking recovery under a surety bond. After Frontier removed the action from South Carolina state court, the district court granted Frontier's motion to stay the action as Frontier had entered rehabilitation proceedings in New York. After approximately 27 months, the district court granted Spencer's motion to lift the stay and later entered summary judgment in favor of Spencer, holding Frontier liable on the surety bond. The district court held a bench trial to determine damages and entered judgment for Spencer in the amount of $1,559,256.78. Frontier appeals the district court's decisions to lift the stay, enter summary judgment in favor of Spencer on the issue of liability, and the award of damages to Spencer. We affirm.

I.

In September, 1999, Thomas Spencer, now deceased, and his son Curtis Spencer (collectively "Spencer") sold their family business to Trailer Holdings, Inc., which later assigned its rights to C.T. Acquisition Corp. (CTAC). The initial sale of the Spencer business was made pursuant to a stock purchase agreement (SPA). When CTAC acquired its rights from Trailer Holdings, it delivered a $1.2 million five-year note to Spencer. The note required CTAC to make

3

monthly interest-only payments and a single principal payment of $1.2 million due at maturity. Along with the note, CTAC delivered a surety bond making Frontier jointly and severally liable with CTAC in the event CTAC defaulted on the note. Three CTAC owners and officers, Timothy Durham, J.R. Hitchcock, and Terry Whitesell (collectively "Durham"), agreed to personally indemnify Frontier in the event Frontier became liable on the bond. CTAC defaulted on June 1, 2002. Shortly thereafter, Spencer filed suit against Frontier in South Carolina.

Prior to default, on October 15, 2001, Frontier entered rehabilitation proceedings in New York, which remain ongoing. These proceedings arise from New York's insurance regulatory statutes that provide for uniform treatment of claims against an insurer in rehabilitation. Part 19 of the Supreme Court of New York issued an order declaring Frontier insolvent and appointing the New York Superintendent of Insurance (Superintendent) as Rehabilitator. The order states that "[a]ll persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator." This order and its anti-suit injunction remain in effect today.

On May 11, 2004, as part of its rehabilitation proceedings, Frontier requested and received the authority to dispose of surety claims against it. The procedure allowed the Superintendent to

4

examine all surety claims and provide each claimant with a "Notice of Determination" describing the amount, if any, recommended for allowance by Frontier. Claimants are permitted to object to the Superintendent's determination and such contested claims are reviewed by a "referee appointed by the Court." There is no evidence of any independent procedure for judicial review of the referee's determination. On September 23, 2005, Frontier mailed a notice of determination to Spencer stating that the Superintendent had disallowed the Spencer claim. The reason for disallowance was "[t]he Principal was substituted without prior written consent of the Surety." Spencer has timely objected to this decision in the New York rehabilitation proceeding.

On October 29, 2004, approximately one year before Spencer's claim was disallowed in New York, Frontier initiated an action against Durham in United States District Court for the Southern District of Indiana. Frontier sought to recover upon the indemnity agreement signed by Durham. Spencer moved to intervene, but the Indiana district court denied the motion reasoning that "[t]he South Carolina district court can protect Mr. Spencer's interests in the action pending there." The court later dismissed Frontier's action without prejudice as being prematurely asserted under the terms of the indemnity agreement.

After removing Spencer's action to the district court, Frontier moved to dismiss or stay the action pending final

5

resolution of Frontier's rehabilitation proceeding in New York. The district court granted a stay on May 27, 2003, under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), and directed the parties to file quarterly status reports on the progress of Frontier's rehabilitation. After denying Spencer's request to lift the stay in October, 2003, the district court granted Spencer's motion to lift the stay on November 10, 2005. On February 10, 2006, the district court granted Spencer's motion for summary judgment as to Frontier's liability on the bond but denied Spencer's motion with respect to damages. On March 22, 2006, the district court held a bench trial to determine damages and issued an order awarding Spencer $1,559,256.78.

II.

This Court reviews a district court's decision to abstain under <u>Burford</u> for abuse of discretion. <u>Martin v. Stewart</u>, 499 F.3d 360, 363 (4th Cir. 2007)(<u>citing</u> <u>Harper v. Pub Serv. Comm'n</u>, 396 F.3d 348, 357-58 (4th Cir. 2005)). A district court abuses its discretion whenever "its decision is guided by erroneous legal principles." <u>Id.</u> (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Koon v. United States</u>, 518 U.S. 81, 100 (1996)("A district court by definition abuses its discretion when it makes an error of law"). Moreover, "there is little or no discretion to abstain in a case

6

which does not meet traditional abstention requirements." Martin, 499 F.3d at 363 (internal quotation marks omitted).

We have stated that "a federal court may abstain under Burford from its 'strict duty to exercise' congressionally conferred jurisdiction only when the importance of difficult questions of state law or the state's interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." Id. at 365 (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). In Burford, the Supreme Court held that a federal court's abstention is appropriate when judicial review in the designed state forum is "expeditious and adequate," and that proceedings in federal court could cause "delay, misunderstanding of local law and federal conflict with state policy." Burford, 319 U.S. at 327-34.

In its initial decision to stay the case, the district court noted that "[t]he rehabilitation of a very large insurance company by the State of New York is indisputably a matter of substantial public concern in New York, and for this case to proceed against Frontier could disturb that rehabilitation." In its decision to lift the stay, the district court reasoned:

> [t]he court . . . is not convinced that [Spencer's] due
> process rights are being adequately protected . . . .
> This court has an interest in the fair and efficient
> administration of justice for litigants residing in this
> district. [Spencer] has waited almost three years for his
> day in court and under the procedures in place in the New
> York rehabilitation action, there is no end in sight . .
> . . Meanwhile, [Frontier] takes seemingly inconsistent
> positions by denying [Spencer's] claim while
> simultaneously seeking indemnification for that claim in

7

Indiana. The <u>Burford</u> abstention doctrine should not be used as a shield to delay justice indefinitely.

We agree with the district court that there is a strong federal interest in adjudicating this case, given the lengthy rehabilitation proceedings in New York. Moreover, we conclude that the district court did not abuse its discretion by lifting the stay because this case does not meet the requirements for abstention under <u>Burford</u>.

First, this case does not present difficult questions of New York state law. Spencer's complaint simply requires the interpretation and construction of three documents — the SPA, note, and bond — each of which is to be construed under South Carolina law. Indeed, a United States court sitting in South Carolina is likely to be far more competent in interpreting South Carolina contract law than a New York Supreme Court or the New York Superintendent of Insurance. Moreover, contract interpretation issues of this sort rarely present difficult questions of state law no matter the jurisdiction.

Second, although New York clearly has an interest in the uniform regulation of its insurance industry, a judgment in this case would not upset that uniformity. Possessing a judgment in its favor, Spencer would still be required to appeal to New York courts to enforce that judgment. Once Spencer seeks to enforce its judgment in New York, a New York court may evaluate Spencer's claim

8

in the context of Frontier's ongoing rehabilitation by determining its priority relative to other similar claims against Frontier.

Frontier cites two decisions by this Court upholding a district court's decision to dismiss or abstain under <u>Burford</u> an action against entities embroiled in state regulatory proceedings. See <u>First Penn-Pacific Life Ins. Co. v. Evans</u>, 304 F.3d 345, 348 (4th Cir. 2002)(upholding district court decision to dismiss under <u>Burford</u> an action against an insurance company in receivership in order to avoid complicating efficient administration of insurer's estate); <u>Brandenburg v. Seidel</u>, 859 F.2d 1179, 1190-93 (4th Cir. 1988)(upholding district court decision to abstain under <u>Burford</u> an action against an insolvent state-chartered savings and loan association involved in liquidation proceedings). To hold in Frontier's favor on account of this precedent would be tantamount to stating a rule that abstention would be required in this case, a proposition neither of these cases stand for. In <u>Evans</u>, the majority responded to the dissent's criticism that it had impermissibly widened <u>Burford</u>'s narrow exception to federal courts' duty to decide cases by stating that "[t]o read the dissent, one would think that <u>Burford</u> abstention was a 'require[ment]' in this case. Our holding is simply that the district court did not abuse its discretion in abstaining here." <u>Evans</u>, 304 F.3d at 348 n. 1.(quoting Luttig, J., dissenting) Similarly, we decline to state a rule that abstention was required in this case, and hold that the

9

district court did not abuse its discretion by allowing Spencer's action to proceed.

III.

We next consider whether the district court properly granted summary judgment on the liability issue. This Court reviews <u>de novo</u> the district court's entry of summary judgment. <u>See</u> <u>Nat'l City Bank of Ind. v. Turnbaugh</u>, 463 F.3d 325, 329 (4th Cir. 2006)("We review a grant of summary judgment <u>de novo</u>"). Summary judgment is appropriate where there is no genuine issue as to any material fact. <u>See</u> Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. <u>See</u> <u>id.</u> Mere speculation by the non-moving party "cannot create a genuine issue of material fact." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985); <u>see also</u> <u>Ash v. United Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a

10

"showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996)(en banc).

On December 14, 1999, Frontier executed the surety bond, which specifically references the SPA that was signed on September 3, 1999. The SPA states that a note would be executed at closing, which occurred on December 17, 1999, three days after Frontier executed the bond. The SPA and the note contain slightly different terms regarding the debt owed by CTAC to Spencer. Frontier argues that because the bond pre-dated the note, this change in terms discharges Frontier's liability under the bond. The bond provides that Frontier is liable as a surety:

> [w]hereas, under the date of 9/3/99, [CTAC and Spencer] entered into a written Agreement . . ., effective as of 12/17/99; and Whereas, under the Agreement, [CTAC] has agreed to pay [Spencer] one payment of $1,200,000.00 on the 1st day of January 2005 . . . and to secure said Payment by the delivery to [Spencer] of a Surety Bond; Now, therefore, in the event of default under the Agreement, [Frontier] shall become liable for the immediate payment to [Spencer] of a specific sum equal to the total of all amounts due or to become due under the Agreement, which have not been paid to [Spencer].

The SPA states that "'Agreement' means this Stock Purchase Agreement, the Exhibits and schedules attached hereto and the

11

Certificates delivered in connection herewith, as the same may be amended, supplemented or otherwise modified from time to time in accordance with the provisions hereof." With regard to debt, the SPA states that:

> Buyer will deliver to Sellers at Closing its Promissory Note in the principal sum of One Million Two Hundred Thousand Dollars . . . such Note shall have a five (5) year term to maturity at eight percent (8%) interest per annum . . . . Interest only shall be paid monthly on the Note during the five (5) year term, with the principal and accrued unpaid interest, if any, due and payable in full on the 1st day of the 61st month following closing.

The SPA further states that "[t]he Note shall be secured by a Surety Bond issued by Frontier Insurance Company . . . in the face amount of [$1.2 million]."

The note contains the same principal, interest rate, and term-to-maturity terms as the SPA, but also includes additional terms. The note provides a penalty interest rate of two percent on outstanding principal in the event of default, an acceleration clause making the note's principal balance and unpaid interest immediately due in the event of default, and a provision for attorney's fees should any part of the note be collected by or through an attorney.

Frontier argues that it should be discharged from the bond because the additional terms in the note materially increased the risk Frontier faced in acting as a surety to CTAC's debt. See Employers Ins. of Wassau v. Construction Mgmt. Engineers of Florida, 297 S.C. 354, 358 (S.C. App. 1989)(upholding trial court's

12

decision to discharge surety as a matter of law after subsequent contract changed surety's risk). This argument fails because the SPA specifically references a promissory note to be delivered to Spencer at the time of closing. The bond makes Frontier liable for "a specific sum equal to the total of all amounts due or to become due under the [SPA]." The SPA, in referring specifically to a promissory note to be delivered at closing, by definition incorporates the terms of that note into the SPA. As the bond makes Frontier liable for all amounts due under the SPA, which incorporates the terms of the note, the bond therefore makes Frontier liable as surety for obligations due under the note. Moreover, Frontier, a sophisticated party, chose to execute its surety bond three days prior to closing without specifically examining the terms of the promissory note it knew would be delivered at closing. The note does not alter the principal, interest rate, and term-to-maturity terms described in the SPA, but adds extra terms concerning the amount to be paid by the borrower in the event of default. Consequently, Frontier cannot escape its obligation as surety by failing to examine a promissory note it knew was being delivered on December 17.

Frontier also contends that the district court erred in granting summary judgment on the liability issue because a genuine issue of material fact exists as to whether changes in CTAC's corporate structure ought to discharge Frontier from liability

13

under the bond.  See Berry v. Adams, 157 S.E. 805, 806 (S.C. 1931)(stating that a surety may be released from liability because of a change to the principal).  More than a year after Frontier executed the bond, CTAC's ownership changed.  The three CTAC owners who signed the indemnity agreement with Frontier sold their interest in CTAC.  Frontier argues that this change in ownership is a significant enough change in the risk Frontier faced  to create a genuine issue of material fact to be determined at trial.  However, the bond provides that "Principal and Surety, their heirs, executors, administrators, successors and assigns are hereby jointly and severally liable" (emphasis added).  Because the bond specifically maintains liability in the face of ownership change, Frontier cannot escape liability on this basis as a matter of law.

As there is no dispute that the principal has breached its duties under the note, we agree with the district court that Frontier is liable as surety for all payments due under the note.


IV.

We next consider the district court's damages award.  On appeal from a bench trial, the appellate court may set aside findings of fact only if they are clearly erroneous, and must give due regard to the opportunity of the trial court to judge the credibility of witnesses.  See Fed. R. Civ. P. 52(a); Minyard Enterprises Inc. v. Southeastern Chemical & Solvent Co., 184 F.3d

14

373, 380 (4th Cir. 1999). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." Minyard, 184 F.3d at 380 (internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Provident Life & Accident Co. v. Cohen, 423 F.3d 413, 418 (4th Cir. 2005)(citing Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)).

After review of the record in its entirety, we find the district court's account of the evidence to be supported by the evidence and not clearly erroneous.

Frontier argues that the district court's damages award ought to be set aside because the district court committed an error of law by awarding damages in excess of the surety bond's penal sum. See North River Ins. Co. v. Claar, 382 S.E.2d 8, 10 (S.C. 1989)(stating that a surety's liability is limited to the bond's penal amount). Frontier argues that the bond's penal sum is the $1.2 million debt described in the SPA and that the district court erred by awarding Spencer approximately $1.56 million. This excess damages award is explained by the penal interest rate associated with CTAC's breach of its obligation under the note and the award

15

of attorney's fees pursuant to the note.  Frontier's argument fails because we have held that the SPA and the bond both incorporate the terms of the note, thus exposing Frontier to liability in excess of the $1.2 million face amount.

## V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.