In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3510

FRONTIER INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

J. ROE HITCHCOCK, TIMOTHY S. DURHAM, and
TERRY G. WHITESELL,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cv-00531-TWP-DML—**Tanya Walton Pratt**, *Judge*.

ARGUED SEPTEMBER 17, 2012—DECIDED MARCH 19, 2013

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In 1999 Thomas Spencer,
Curtis Spencer, and Cameron Evans (the Sellers)
conveyed Evans Trailers and John Evans Sales Co. to CT
Acquisition Corp. The price was to be paid over time. The
Sellers wanted assurance of payment, so they insisted
not only on a surety bond (put up by Frontier Insurance
Co.) but also on personal guarantees by J. Roe Hitchcock,

Timothy Durham, and Terry Whitesell (the Guarantors), the principals of CT Acquisition. Frontier Insurance likewise wanted protection. The Guarantors promised to indemnify Frontier, should it be called on to pay; they also promised to post collateral on Frontier's demand.

CT Acquisition did not pay, the Guarantors failed to keep their promise, and the Sellers turned to Frontier. It did not pay either, because it was in financial distress. In 2001 New York's Superintendent of Financial Services placed Frontier in "rehabilitation" (the insurance business's version of bankruptcy), where it has remained. Frontier sought to acquire from the Guarantors the funds to honor its commitment to the Sellers. It demanded that the Guarantors post collateral under ¶3 of their agreement with it. This paragraph reads:

> Upon written demand from the Company [Frontier], to deposit with the Company funds to meet all its liability under said bond or bonds promptly on request and before it may be required to make any payment thereunder and that any voucher or other evidence of payment by the Company of any such loss, damage, costs and expense shall be prima facie evidence of the fact and amount of the Undersigned's [the Guarantors'] liability to the Company under this Agreement.

The Guarantors balked. In 2004 Frontier sued the Guarantors, but the district court read ¶3 to require collateral only after Frontier's obligation to the Sellers had been satisfied, or at least quantified. The suit was dismissed as unripe.

Meanwhile the Sellers had sued Frontier. That action ended with a decision that it owes the Sellers more than $1.5 million, plus post-judgment interest. *Spencer v. Frontier Insurance Co.*, 290 Fed. App'x 571 (4th Cir. 2008). Frontier then filed another suit against the Guarantors. The district court concluded that, Frontier's obligation having been quantified, the Guarantors now must post collateral. 2010 U.S. Dist. LEXIS 30782 (S.D. Ind. Mar. 30, 2010). But the court neglected to say how much. The absence of a final decision led us to dismiss the Guarantors' appeal. 406 Fed. App'x 78 (7th Cir. 2011). After the case had been reassigned (the three decisions have been rendered by different judges), the district court ordered the Guarantors to deposit with the Clerk $1,559,256.78—the amount the fourth circuit had set, though without interest. 2011 U.S. Dist. LEXIS 48127 (S.D. Ind. May 4, 2011).

In this appeal, the Guarantors insist that they need not post collateral until Frontier has paid the Sellers. They hope that the ongoing rehabilitation will either prevent Frontier from paying or reduce the amount it owes. In other words, they contend that their only obligation is to indemnify Frontier after the fact. Yet the agreement between the Guarantors and Frontier has separate indemnity and security clauses. Paragraph 1 calls for indemnity; ¶3, on which this proceeding turns, calls for collateral "[u]pon written demand" from Frontier—which it may make "before it may be required to make any payment thereunder". Paragraph 3 is straightforward. The point of collateral is to provide assurance of payment, should the need arise. If Frontier had to pay first,

before turning to the Guarantors, there would be no role for collateral; the contract would provide only indemnity. For more than a decade, the Guarantors have failed to pay the Sellers or post collateral for Frontier's benefit. No wonder Frontier deems itself insecure and fears that the Guarantors will fail to indemnify it following its payment to the Sellers.

The Guarantors rely on the second half of ¶3: "any voucher or other evidence of payment by the Company of any such loss, damage, costs and expense shall be prima facie evidence of the fact and amount of the Undersigned's [the Guarantors'] liability to the Company under this Agreement." This, they insist, delays the need to post collateral until Frontier supplies "evidence of payment." Yet this language does not say that *only* evidence of payment suffices to quantify the Guarantors' obligation. There are other ways to do it. The district court concluded that the judgment in the Sellers' action had quantified the obligation. Perhaps a written estimate from Frontier would have been enough. Had an appeal been taken from the district court's 2006 order dismissing Frontier's first suit, that question would have been important. It does not matter now, given the fourth circuit's 2008 decision. All we need say is that the second half of ¶3 does not cancel out the first half, which states that the Guarantors must post collateral on Frontier's demand—and that demand may come "before [Frontier] may be required to make any payment thereunder". The Guarantors' current argument would turn ¶3, the collateral requirement, into an echo of ¶1, the indem-

nity requirement. They are distinct, and each has an independent function.

The Guarantors insist that ¶3 is ambiguous, and they want us to construe it against the insurer. The *contra proferentum* principle of insurance law is a tie-breaker, see *Great West Casualty Co. v. Mayorga*, 342 F.3d 816 (7th Cir. 2003), and there's no tie here. Paragraph 3 says that a demand for collateral may occur "before [Frontier] may be required to make any payment thereunder". The Guarantors must keep their promise to post collateral.

If the existence of a fund in the registry of the district court permits Frontier to pay the Sellers 100¢ on the dollar, the Guarantors have no legitimate complaint. There is no reason why Frontier's financial troubles should benefit the Guarantors at the expense of the Sellers. If, however, New York's insurance authorities instruct or permit Frontier to pay the Sellers less than the face value of the surety bond, then the Clerk of the district court will return the excess to the Guarantors. The final disposition of these funds thus depends on the outcome of Frontier's rehabilitation. Until then, however, Frontier is entitled to the security that the Guarantors promised to provide.

AFFIRMED