OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
In this case, the district court dismissed federal constitutional challenges to two South Carolina statutes regulating video poker, on the ground that Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), mandated abstention. Because resolution of these challenges neither requires a court to adjudicate difficult questions of state law, nor disrupts state efforts to establish through a complex regulatory process a coherent policy on a matter of substantial public concern, this case falls well outside the narrow category of cases to which Burford abstention may apply. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.
*362 I.
The parties do not dispute the material facts. Jimmy Martin and Lucky Strike, LLC (collectively Martin), brought this action against three South Carolina officials in their official capacities: Robert Stewart, Chief of the State Law Enforcement Division; Henry McMaster, Attorney General; and Ralph Hoisington, Solicitor of the Ninth Judicial Circuit (collectively the State). Martin sought to enjoin enforcement of two South Carolina statutes criminalizing certain “deviee[s] pertaining to games of chance.” S.C.Code Ann. §§ 12-21-2710 & -2712 (2006). Like all statutes regulating “gambling enterprises,” such legislation lies well within “the state’s police power.” Johnson v. Collins Entm’t Co., 199 F.3d 710, 720 (4th Cir.1999). Martin does not contend to the contrary, nor does he assert that the South Carolina statutes violate any state law or policy. Rather, Martin maintains that the challenged statutes violate the Constitution of the United States.
The South Carolina legislature enacted the provisions at issue in a 1999 amendment to South Carolina’s gambling laws. See 1999 S.C. Acts 1319-23. The first provision, section 12-21-2710,[1] makes it unlawful for a person to “keep on his premises or operate” certain gaming machines, including “devicefs] pertaining to games of chance.” S.C.Code Ann. § 12-21-2710. A violation of this statute constitutes a misdemeanor, punishable by a fine not to exceed $500, imprisonment for no more than a year, or both. Id.
The second challenged provision, section 12-21-2712, directs law enforcement officers to seize machines prohibited by section 12-21-2710 and bring them before a county magistrate. S.C.Code Ann. § 12-21-2712. The magistrate must determine whether the machine violates any law and, if it does, order its destruction. Id.[2] South Carolina law entitles a machine owner to a post-seizure hearing before a magistrate to determine the machine’s legality and to an appeal of that decision to higher courts. See Mims Amusement Co. v. S.C. Law *363 Enforcement Div., 366 S.C. 141, 621 S.E.2d 344, 351 (2005). No pre-enforcement mechanism exists for testing a particular machine’s legality.
Martin filed this action in federal court in the District of South Carolina, asserting that sections 12-21-2710 and 12-21-2712 violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Although the district court had federal question jurisdiction to consider these constitutional claims, see 28 U.S.C. § 1331 (2000), the State moved to dismiss. Believing the Burford doctrine required abstention, the district court granted the motion. Martin v. Stewart, 438 F.Supp.2d 603, 608-09 (D.S.C.2006). Martin noted a timely appeal and we have jurisdiction to consider this appeal under 28 U.S.C. § 1291 (2000).
We review a district court’s decision to abstain under Burford for abuse of discretion. Harper v. Pub. Serv. Comm’n, 396 F.3d 348, 357-58 (4th Cir.2005). A district court abuses its discretion whenever “its decision is guided by erroneous legal principles.” United States v. Under Seal (In re Grand Jury), 478 F.3d 581, 584 (4th Cir.2007) (internal quotation marks omitted); see also Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (“A district court by definition abuses its discretion when it makes an error of law.”). Consequently, “there is little or no discretion to abstain in a case which does not meet traditional abstention requirements.” Dittmer v. County of Suffolk, 146 F.3d 113, 116 (2d Cir.1998) (internal quotation marks omitted).
II.
The Supreme Court has repeatedly instructed that “federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.” Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); see, e.g., Deakins v. Monaghan, 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (“[T]he federal courts have a virtually unflagging obligation to exercise their jurisdiction .... ” (internal quotation marks omitted)); England v. La. State Bd. of Med. Exam’rs, 375 U.S. 411, 415, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (“ ‘When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.’ ” (quoting Willcox v. Consol. Gas Co., 212 U.S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909))); Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (“[The Supreme Court] ha[s] no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.”).
Abstention doctrines constitute “extraordinary and narrow exception[s]” to a federal court’s duty to exercise the jurisdiction conferred on it. Quackenbush, 517 U.S. at 716, 728, 116 S.Ct. 1712 (internal quotation marks omitted). These exceptions require the denial of discretionary relief when “principles of federalism and comity” outweigh the federal interest in deciding a case. See id. at 716, 728, 116 S.Ct. 1712. To cabin that discretion and ensure that abstention “remains the exception, not the rule,” the Supreme Court has “carefully defined ... the areas in which such abstention is permissible.” New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI) (internal quotation marks omitted).
For example, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), permits federal courts to abstain from hearing cases that would interfere with a pending state criminal proceeding. Pursuant to Railroad Commission v. Pull *364 man Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), courts may abstain when the need to decide a federal constitutional question might be avoided if state courts are given the opportunity to construe ambiguous state law. Another doctrine, articulated in Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), allows abstention in cases raising issues “intimately involved with [the State’s] sovereign prerogative,” where proper adjudication might be impaired by unsettled questions of state law. And in Burford, the Court recognized that courts may abstain when the availability of an alternative, federal forum threatened to frustrate the purpose of a state’s complex administrative system. Burford, 319 U.S. at 331-32, 63 S.Ct. 1098; see also Quackenbush, 517 U.S. at 725, 116 S.Ct. 1712; Ala. Pub. Serv. Comm’n v. S. Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).
To be sure, these discrete abstention doctrines “are not rigid pigeonholes into which federal courts must try to fit cases.” Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Overlapping rationales motivate these doctrines and considerations that support abstaining under one will often support abstaining under another. Id. But at the same time, the Supreme Court has never allowed abstention to be a license for free-form ad hoc judicial balancing of the totality of state and federal interests in a case. The Court has instead defined specific doctrines that apply in particular classes of cases. See NOPSI, 491 U.S. at 359, 109 S.Ct. 2506. In this case, the district court relied solely on Burford abstention.[3]
The Burford doctrine “justifies] the dismissal of a federal action” in a “narrow range of circumstances.” Quackenbush, 517 U.S. at 726, 116 S.Ct. 1712. Burford permits abstention when federal adjudication would “unduly intrude” upon “complex state administrative processes” because either: (1) “there are difficult questions of state law ... whose importance transcends the result in the case then at bar”; or (2) federal review would disrupt “state efforts to establish a coherent policy with respect to a matter of substantial public concern.” NOPSI, 491 U.S. at 361-63, 109 S.Ct. 2506 (internal quotation marks omitted). Moreover, the Supreme Court has directed that “Burford allows a federal court to dismiss a case only” when presented with these “extraordinary circumstances.” Quackenbush, 517 U.S. at 726-27, 116 S.Ct. 1712. Courts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar. NOPSI, 491 U.S. at 362, 109 S.Ct. 2506. “This balance only rarely favors abstention.” Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712.
The Supreme Court has consistently refused to abstain under Burford when neither of these criteria were met. See, e.g., NOPSI, 491 U.S. at 361-62, 109 S.Ct. 2506 (holding district court abused its discretion in abstaining when no “state-law claim” is involved and adjudication of preemption claim “would not disrupt the State’s at *365 tempt to ensure uniformity”); Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 815, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (holding district court abused its discretion in abstaining under Burford when “state law to be applied appeared] to be settled” and federal adjudication would not “impair efforts to implement state policy”); McNeese v. Bd. of Educ., 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (declining to abstain when “no underlying issue of state law controls]” and “[t]he right alleged is ... plainly federal in origin and nature”).
We too have limited Burford abstention to cases in which these criteria were met. Compare First Penn-Pacific Life Ins. Co. v. Evans, 304 F.3d 345, 350 (4th Cir.2002) (holding abstention proper when federal adjudication would interfere with state receivership proceedings and “disrupt[] the state’s efforts to provide a unified method” for liquidation of debtor’s assets) (internal quotation marks omitted), and Collins, 199 F.3d at 720, 723-24 (holding abstention proper when federal adjudication would require federal court to “answer disputed questions of state gaming law that ... powerfully impact the welfare of [state] citizens” and requested relief would “effectively establish[ ] parallel federal and state oversight of the [state] video poker industry”), with Harper, 396 F.3d at 358 (holding district court abused its discretion in abstaining when case “involves [the] vital federal question” of whether state law is constitutional and “federal jurisdiction [would not] impede the formation of core state policies”), Gross v. Weingarten, 217 F.3d 208, 224 (4th Cir.2000) (holding abstention improper when case involved no “difficult questions of state law ... whose importance transcends the result in the case at bar” and federal adjudication “would not [disrupt] state efforts to establish a coherent policy”) (internal quotation marks omitted), and Neufeld v. City of Baltimore, 964 F.2d 347, 350-51 (4th Cir.1992) (holding district court abused its discretion in abstaining when case presented no “difficult questions of state law” and a “federal decision [would not] disrupt the efficacy of an important and coherent state policy”).
In sum, a federal court may abstain under Burford from its “strict duty to exercise” congressionally conferred jurisdiction, Quackenbush, 517 U.S. at 716, 116 S.Ct. 1712, only when the importance of difficult questions of state law or the state’s interest in uniform regulation outweighs the federal interest in adjudicating the case at bar. The State recognizes that these principles control the abstention inquiry here and, with them in mind, we turn to the case at hand.
III.
Martin seeks a single remedy: an injunction against the enforcement of sections 12-21-2710 and 12-21-2712. He maintains that these statutes violate his Due Process and Equal Protection rights under the Fourteenth Amendment of the United States Constitution. Specifically, Martin argues that section 12-21-2710, which provides for criminal penalties, is void for vagueness because it fails to give fair notice of forbidden conduct and allows arbitrary enforcement, thus violating the Due Process Clause. He also contends that the failure of both statutes to provide a pre-enforcement mechanism for determining the legality of an amusement device and the State’s discriminatory enforcement of these statutes violates the Equal Protection Clause.
These claims present no difficult questions of state law whose importance outweighs the federal interest in adjudicating Martin’s constitutional case. Nor do these claims threaten a state interest in uniform *366 regulation that outweighs the federal interest in adjudicating the case. Accordingly, Burford does not permit abstention here.
A.
The Due Process challenge to section 12-21-2710 involves no difficult question of state law because, as the State itself recognizes, and in fact argues, section 12-21-2710 is “well defined by the [Supreme Court of South Carolina’s] many interpretations.” Brief of Appellees at 37. See, e.g., Sun Light Prepaid Phonecard Co. v. State, 360 S.C. 49, 600 S.E.2d 61, 64 & n. 6 (2004) (holding that a device “pertain[s] to [a] game[ ] of chance” because it contains an “element of chance” and is not “part of a legitimate promotion” to sell a product).
Indeed, in State v. DeAngelis, 257 S.C. 44, 183 S.E.2d 906, 908 (1971), the state court rejected a vagueness challenge to precisely the same language — “games of chance of whatever name or kind” — that Martin targets, holding that “[a]n analysis of [the statute’s] wording convinces us that a man of reasonable intelligence is given fair notice of the machines proscribed [and that] the statute cannot be used in a capricious or discriminatory manner.”[4] Thus, the state law component of a vagueness challenge — whether limiting constructions apply to the language — -is settled: the State’s highest court has expressly held that the statutory text is to be given its ordinary meaning. The remaining question — whether the statute’s ordinary meaning is unconstitutionally vague — is a matter of federal law. Thus, because state law is now “clear and certain,” Burford abstention is inappropriate. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 196, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); see also Colo. River, 424 U.S. at 815, 96 S.Ct. 1236 (holding case “does not fall within” Burford doctrine when state law “appears to be settled”).
For similar reasons, Martin’s discriminatory enforcement claim presents no difficult question of state law. To prevail on that claim, Martin must demonstrate that (1) he was similarly situated to persons not prosecuted; and (2) a discriminatory purpose motivated this different treatment. See United States v. Armstrong, 517 U.S. 456, 465-66, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The first inquiry requires a court to determine which video poker machines are prohibited by statute, but such an inquiry hardly *367 involves a difficult state law question given that DeAngelis held that “a [person] of reasonable intelligence is given fair notice of the machines proscribed.” 183 S.E.2d at 908. If the district court should determine that state law enforcement treats parties similarly situated under the statute differently, the remaining question is purely federal — whether an impermissible purpose motivated this different treatment.
Finally, Martin’s claim regarding the lack of a pre-enforcement mechanism for determining a machine’s legality presents no state law question at all because indisputably South Carolina provides no pre-enforcement mechanism. Thus, resolving this claim involves no interpretation of any state law, but only the determination of whether settled South Carolina law violates federal constitutional rights. Therefore, none of Martin’s challenges presents difficult questions of state law, let alone difficult questions whose importance outweighs the federal interest in adjudicating Martin’s claims.[5]
B.
Nor do any of Martin’s claims threaten a state interest in uniform regulation. Martin launches a facial attack on the state statutes as a whole — precisely the sort of case federal courts often and expertly entertain. See Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 601 (2d Cir.1988) (declining to abstain under Bur-ford when “case is a direct challenge to the constitutionality of a state statute, a controversy federal courts are particularly suited to adjudicate”). If Martin should succeed, the district court would enjoin all enforcement of the statutes at issue; such relief could not possibly threaten their uniform application.[6]
Moreover, contrary to the State’s suggestion, Brief of Appellees at 20, “there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy.” Zablocki v. Redhail, 434 U.S. 374, 379-80 n. 5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Therefore, “the threat that the federal courts might decide the entire state system unconstitutional is not a valid justification for Burford abstention.” Neufeld, 964 F.2d at 351. Rather, this “sort of risk is present whenever one attacks a state law on constitutional grounds in a federal court.” Bath Mem. Hosp. v. Me. Health Care Fin. Comm’n, 853 F.2d 1007, 1013 (1st Cir.1988).
As then — Judge Breyer explained in refusing to abstain from deciding similar constitutional challenges to several state statutes:
The plaintiffs do not seek individualized review of fact(or cost-) specific regulatory decision making. To the contrary, they attack the statute as it *368 is written. Permitting a federal court to decide this kind of constitutional claim would not interfere significantly with the workings of a lawful state system, as such intervention threatened in Burford ....
Id. at 1014.
Justice Breyer’s words reflect an important distinction, which the State fails to recognize, between federal claims that rest on an alleged predicate violation of state law and those that do not. Federal claims that rest on allegations that a state agency or private actors violated state law can sometimes undermine a state’s efforts to regulate uniformly — if the federal court interprets state law differently than the state enforcement agency or the state forum that would otherwise hear the dispute. When a “federal” claim rests on a violation of state law, we consider it a “state law [claim] in federal law clothing.” Collins, 199 F.3d at 721 (internal quotation marks omitted). Because of the diminished federal interest in adjudicating such claims and the heightened threat they pose to uniform state regulation, federal courts have less interest at stake in adjudicating such claims and often abstain in such cases. Id.; see, e.g., Burford, 319 U.S. at 317, 63 S.Ct. 1098 (due process claim that state agency unreasonably applied state law); Collins, 199 F.3d at 722 (civil RICO claim dependent on violations of state law for predicate acts).
But federal claims, like those at issue here, which do not rest on finding a violation of state law, are federal not only in “clothing,” but also in fact. Such claims are “plainly federal in origin and nature,” are independent of any state law violation, and do not threaten uniform state regulation. McNeese, 373 U.S. at 674, 83 S.Ct. 1433. The Burford doctrine does not permit a federal court to abstain from deciding them. See, e.g., id.; NOPSI, 491 U.S. at 362, 364, 109 S.Ct. 2506 (holding “Bur-ford abstention is not justified” when “primary claim” is that state body violated “federal law”); Harper, 396 F.3d at 358 (holding that “[a]pplying Burford here was inappropriate” because, unlike Collins, 199 F.3d at 719, case “involves a vital federal question” — the constitutionality of a state statute); Neufeld, 964 F.2d at 350 (holding Burford did not apply to claims challenging state statute on federal constitutional grounds).
Because Martin’s claims neither involve difficult questions of state law nor threaten a state interest in uniform regulation, the Burford doctrine does not justify abstention here.
IV.
Notwithstanding the State’s agreement as to the undisputed material facts and its acknowledgment of controlling legal principles, it insists that Burford does require abstention in this case. The State’s position rests on two fundamental errors: (1) a serious mischaracterization of Martin’s claims and (2) an equally serious misreading of our opinion in Collins.
A.
First, the State iterates and reiterates that Martin seeks to have “classes and categories of machines declared ‘legal’ under South Carolina law” or to have a federal court “replace [South Carolina’s forfeiture system] with a method of [Martin’s] own choosing.” Brief of Appellees at 3. These assertions, repeated at oral argument and at least ten times in the State’s brief, see id. at 2, 3, 9, 10, 14, 21, 50, 53, are simply not accurate. Martin seeks only “injunctive relief prohibiting the enforcement of’ two state statutes, which he claims violate the United States Constitution.
*369 This would be a different case if Martin had, in fact, sought a federal declaration that specific machines were lawful under South Carolina law or a federal injunction seeking replacement of the State’s forfeiture mechanism with one of the court’s design. In such circumstances, adjudication of Martin’s claims might lead a federal court to “effectively commandeer [ ] South Carolina’s enforcement efforts.” Collins, 199 F.3d at 723. But, like the plaintiffs in a case in which the Second Circuit recently reversed a district court’s dismissal on Burford, grounds, Martin does not “collaterally] attack ... a final determination” made by any state administrative agency “or seek to influence a state administrative proceeding.” Dittmer, 146 F.3d at 117. Rather, like those plaintiffs, Martin presents only “a direct facial attack on the constitutionality of a state statute,” the kind of “controversy federal courts are particularly suited to adjudicate.” Id. (internal quotation marks omitted); see also Baran v. Port of Beaumont Navig. Dist., 57 F.3d 436, 442 (5th Cir.1995) (holding “facial challenge” to state statute on federal constitutional grounds does not implicate “the policy concerns of Burford ” and so “abstention under that doctrine would be inappropriate”). In sum, Martin’s actual claims, unlike the fictional ones described by the State, are not proper candidates for Burford abstention.
B.
Moreover, and just as significantly, the State misreads Collins. To be sure, in Collins we properly recognized that “[t]he regulation of gambling enterprises lies at the heart of the state’s police power,” 199 F.3d at 720, and the case at hand, like Collins, involves state regulation of gambling.
But we did not abstain in Collins because it involved the regulation of that important state interest. Abstention on that basis would be improper. Neither Collins nor any other case holds that Bur-ford abstention is appropriate whenever federal litigation affects an important state interest. Indeed, both the Supreme Court and this court have specifically rejected the view that a strong state interest alone could justify Burford abstention. See County of Allegheny, 360 U.S. at 191-92, 79 S.Ct. 1060 (rejecting the suggestion that “abstention is justified ... any time a District Court is called on to adjudicate a case involving the State’s power of eminent domain”); Educ. Servs., Inc. v. Md. State Bd. for Higher Educ., 710 F.2d 170, 173 (4th Cir.1983) (acknowledging “the important and sensitive nature of state educational regulation,” but holding “Burford abstention rests on additional concerns beyond the mere presence of an important state administrative regime, concerns not present here”); see also Hachamovitch v. De Buono, 159 F.3d 687, 698 (2d Cir.1998) (noting “numerous cases have indicated that Burford abstention is not required even in cases where the state has a substantial interest if the state’s regulations violate the federal constitution”).
Instead, we abstained in Collins because we concluded that the criteria for Burford abstention were met. That is, (1) federal adjudication there would require a federal court to “answer disputed questions of state gaming law that ... powerfully impact the welfare of [state] citizens” and (2) the relief sought would “effectively establish ] parallel federal and state oversight of the [state] video poker industry.” Collins, 199 F.3d at 720, 723-24.[7]
*370 In contrast, federal adjudication in this case would not require a federal court to “answer disputed questions of state law,” nor would the relief sought establish “parallel federal and state oversight.” Although the statutes challenged here regulate gambling, unlike Collins, issues of federal law — the constitutionality of those statutes under the Fourteenth Amendment — dominate this action. As we recognized in Harper, 396 F.3d at 358, Burford abstention is “inappropriate” in such a situation. In Harper we contrasted Collins, in which “issues of state law ... dominated,” with a case involving precisely the same kind of “vital federal question” as that at issue here — a challenge to the constitutionality of a state statute. Id. (internal quotation marks omitted). We concluded that the district court had abused its discretion in abstaining in such a case. Id. So it is here.
Contrary to the State’s apparent belief, Collins did not create a “video-poker abstention” doctrine that forever insulates South Carolina statutes regulating gambling from federal constitutional challenge. The district court abused its discretion in abstaining here under Burford because adjudication of Martin’s claims, unlike the claims advanced in Collins, neither presents difficult questions of state law whose importance transcends the case at bar, nor threatens the State’s interest in uniform regulation.
V.
Although the dissent concedes that “abstention must be carefully cabined,” post at 381, and takes no issue with our statement of the Burford doctrine, it would hold that the district court properly abstained here. It relies on factors totally irrelevant to the “extraordinary and narrow” Burford doctrine, e.g., the absence of a federal gambling statute, the effect of the Fourteenth Amendment and 42 U.S.C. § 1983 (2000) on federal-state relations, the history of gambling regulation, the burdens of discovery, and the alleged federalization of gambling policy. The dissent fails to apply the actual Burford doctrine because it cannot — if it did so it would have to hold that the district court abused its discretion in abstaining here.
The dissent’s analysis appears to be motivated by its preference that cases like Martin’s be brought in state court. See, e.g., post at 372 (“I see no indication in this case that the South Carolina state courts have defaulted in any fashion on their obligation to entertain federal constitutional challenges to the operation of state gambling laws.”); id. at 380 (“[T]he sky will not fall whenever state courts resolve a federal question.”). Although we share the dissent’s respect for our state colleagues, “ ‘[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.’ ” England, 375 U.S. at 415, 84 S.Ct. 461 (quoting Willcox, 212 U.S. at 40, 29 S.Ct. 192) (omission in original). Martin chose to file his claims in a federal forum created by Congress — we cannot deny him that choice even if we disagree with it.
Because Martin’s claims do not meet the “extraordinary and narrow” criteria for Burford abstention, the judgment of the district court is

REVERSED AND REMANDED.

. Section 12-21-2710 provides in full:
It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.
Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.
S.C.Code Ann. § 12-21-2710 (2006).

. Section 2712 reads in full:
Any machine, board, or other device prohibited by Section 12-21-2710 must be seized by any law enforcement officer and at once taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if satisfied that it is in violation of Section 12-21-2710 or any other law of this State, direct that it be immediately destroyed.
S.C.Code Ann. § 12-21-2712 (2006).

. The State also moved to abstain on the basis of Younger, 401 U.S. 37, 91 S.Ct. 746. The district court did not reach this contention and so, although Younger abstention would seem not to apply here, we do not reach the issue either. Moreover, the State has expressly conceded the inapplicability of Pullman abstention. See Defs.’ Reply Br. Supp. Mot. Dismiss 11 ("We are not arguing abstention under [Pullman,] which authorizes a federal court to abstain when construction of a state statute may alleviate a constitutional concern. No construction of the State’s forfeiture of gambling devices statutes is necessary....”).

. The dissent makes the exceedingly odd argument that the DeAngelis holding that the term "games of chance’’ must be given its ordinary meaning somehow renders the statute more difficult to interpret and that we engage in "circular” reasoning in holding to the contrary. See post at 377. In fact, DeAn-gelis resolves any possible difficult state law question and directs a long recognized mode of statutory construction that federal courts are well equipped to undertake. Equally unavailing is the dissent's suggestion that advances in gambling technology have lessened DeAngelis’s significance. See post at 375-78. The Supreme Court of South Carolina has specifically rejected an argument that technological changes lessen the force of its prior interpretations of gambling statutes. See State v. 192 Coin-Operated Video Game Machs., 338 S.C. 176, 525 S.E.2d 872, 878-79 (2000) ("Although slot machines have changed since the 1960s, the substance of [section 12-21-2710] has not. The relevant portions of the current version outlaw the same conduct as its predecessor.”). That the South Carolina legislature has revised its gambling statutes without further defining "games of chance,” provides additional support for finding DeAngelis continues to be authoritative. Id. at 879 ("The legislature is presumed to be aware of [the South Carolina Supreme] Court’s interpretation of its statutes. If the General Assembly considered [the Court’s interpretations] outdated, it could have changed the statute ....”) (citations omitted).

. Martin presses, perhaps without having pled, a claim that the lack of a preenforcement mechanism violates the Due Process Clause under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In any event, this claim neither presents a difficult question of state law (the statute indisputably lacks such a mechanism) nor threatens the State’s interest in uniformity (if successful, all enforcement will be enjoined). Consequently, the district court erred by applying Burford abstention to this claim.

. The dissent frets that litigation of Martin’s discriminatory enforcement claim will require “discovery [that] would put South Carolina’s regulatory regime through the wringer,” post at 379, but cites no authority for the proposition that normal discovery burdens can justify Burford abstention. Moreover, Martin cannot obtain any discovery on his discriminatory enforcement claim unless he makes a "credible showing” that no "legitimate prosecutorial factor” separates his operations from those not prosecuted, United States v. Khan, 461 F.3d 477, 498 (4th Cir.2006).

. We concluded that the district court order reviewed in Collins “effectively commandeered [the State’s] enforcement efforts” by "impos[ing] on [the defendant video poker *370 operators] an extensive set of requirements.” Id. at 718, 723. We noted as an example that "the district court mandated that defendants post a designated 'clarifying sign’ on each video poker machine” and required detailed recordkeeping. Id. at 718.