UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1540

SOUTH CAROLINA ASSOCIATION OF SCHOOL ADMINISTRATORS,

Plaintiff - Appellant,

v.

ROCKY DISABATO, d/b/a Rocky D,

Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.   Cameron McGowan Currie, District Judge.  (3:10-cv-00271-CMC)

Argued:  October 25, 2011              Decided:  January 4, 2012

Before TRAXLER, Chief Judge, and WILKINSON and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Chief Judge Traxler and Judge Wilkinson concurred.

**ARGUED:** John Marshall Reagle, CHILDS & HALLIGAN, P.A., Columbia, South Carolina, for Appellant.  Kevin Alan Hall, HALL & BOWERS, LLC, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Kenneth L. Childs, Keith R. Powell, CHILDS & HALLIGAN, P.A., Columbia, South Carolina, for Appellant.  Karl S. Bowers, Jr., M. Todd Carroll, HALL & BOWERS, LLC, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

With this appeal, the South Carolina Association of School Administrators ("SCASA") seeks to reinstate its federal declaratory judgment action against radio personality Rocky Disabato. Before the district court, SCASA sought to have South Carolina's Freedom of Information Act ("SC FOIA") declared unconstitutional as applied to it as a purportedly public corporation. But in an earlier-filed state case, a state court judge has already held exactly that. Because the district court did not abuse its discretion in determining that abstention in favor of the earlier-filed state suit was appropriate under Younger v. Harris, 401 U.S. 37 (1971), we affirm the dismissal of SCASA's complaint.

I.

SCASA is a non-profit corporation that views itself as "a leading force for public education in South Carolina . . . ." J.A. 5. SCASA engages in issue advocacy through, among other things, "influencing education legislation and policy" and "ensuring a cadre of effective leaders . . . ." J.A. 5.

In May 2009, SCASA brought a lawsuit against then-South Carolina Governor Mark Sanford seeking a writ of mandamus requiring former Governor Sanford to apply to the federal government for federal funds, including approximately $780

2

million for public education and other public services. In June 2009, the South Carolina Supreme Court entered judgment in favor of SCASA and issued a writ of mandamus against former Governor Sanford.

In August 2009, SCASA received a public records request from Disabato. Purportedly pursuant to the SC FOIA, Disabato demanded SCASA records discussing the American Recovery and Reinvestment Act of 2009 and former Governor Sanford, including anything with references to SCASA's lawsuit against former Governor Sanford. Disabato further demanded telephone records reflecting all calls made or received by SCASA and its staff—including staff members' cell phone records—from January 1, 2009 to July 31, 2009.

SCASA responded to Disabato's request in writing, asserting that it was not subject to the SC FOIA because it "is not a public entity and therefore does not have to comply with the Freedom of Information procedures." J.A. 41. Nevertheless, SCASA advised Disabato that it would "be happy to talk with [him] about [his] interest and would try and provide [him] with as much information as possible verbally regarding the stimulus funding issue and Governor Sanford." J.A. 41. SCASA received no further communications from Disabato until it received notice of a lawsuit Disabato had filed against SCASA on December 7, 2009 in the Charleston County Court of Common Pleas.

3

On February 2, 2010, SCASA, in turn, brought a federal declaratory judgment action contending that the SC FOIA was unconstitutional as applied to it as a purportedly public corporation.[1] Specifically, SCASA alleged that

> Relative to non-profit corporations engaged in political speech and issue advocacy, such as SCASA, the FOIA's broad record disclosure requirements chill the exercise of First Amendment rights, and the FOIA's broad record disclosure requirements chill the exercise of First Amendment rights, and the FOIA's open meeting requirements and vague application to any corporation supported in whole or in part by public funds constitute prior restraints on freedom of speech and association.

J.A. 4.

Instead of answering SCASA's federal complaint, Disabato moved the federal district court to abstain and dismiss. SCASA opposed the motion. On April 22, 2010, the district court granted Disabato's motion and dismissed the case on the basis of abstention. SCASA appeals.

---

[1] On February 9, 2010, SCASA notified the State of South Carolina of its constitutional challenge. Though the State has not moved to intervene in SCASA's federal case, the State did move to intervene in the state suit—albeit first at the appellate stage—on September 30, 2011. The Supreme Court of South Carolina granted the motion to intervene on October 14, 2011.

II.

We review a district court's decision to decline jurisdiction based on abstention principles for abuse of discretion. Nivens v. Gilchrist, 444 F.3d 237, 240 (4th Cir. 2006). A district court abuses its discretion whenever "its decision is guided by erroneous legal principles." Martin v. Stewart, 499 F.3d 360, 363 (4th Cir. 2007) (quotation marks omitted). Further, "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." Id. (quotation marks omitted).

In Younger, 401 U.S. 37, the Supreme Court held that a federal court should not enjoin a state criminal prosecution begun before the institution of a federal suit except in rare circumstances. The Supreme Court held that even the possibility of a "chilling effect" on First Amendment freedoms does not by itself justify federal intervention. Id. at 51. Later cases have articulated a three-part test for evaluating Younger abstention claims: "Absent a few extraordinary exceptions, *Younger* mandates that a federal court abstain from exercising jurisdiction and interfering in a state criminal proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and

5

(3) provides adequate opportunity to raise constitutional challenges." Nivens, 444 F.3d at 241 (footnote omitted).

In Younger, which concerned an underlying state criminal case, the Supreme Court did not address abstention in the context of civil proceedings. But the Supreme Court later carried Younger into the civil arena, and even to administrative proceedings. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987) (civil proceedings); Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619 (1986) (administrative proceedings). The Supreme Court noted that Younger was based on concerns for comity and federalism—concerns "equally applicable" to "civil proceedings in which important state interests are involved[,]" so long as those proceedings provide the federal plaintiff with "a full and fair opportunity to litigate [its] constitutional claim." Ohio Civil Rights Comm'n, 477 U.S. at 627.

The Supreme Court's application of Younger abstention in Pennzoil is particularly relevant to our analysis here. In that case, Pennzoil had obtained a state court verdict against Texaco for over $11 billion. Pennzoil, 481 U.S. at 4. Under Texas law, it appeared that the only way Texaco could prevent enforcement of the judgment while challenging it was by posting a bond for more than $13 billion, a bond that Texaco could not have obtained. Id. at 5.

Texaco brought a federal action arguing that application of the Texas bond and lien requirements would deny it various constitutional and statutory rights.  Id. at 6.  Texaco sought an injunction restraining Pennzoil from taking any action to enforce the judgment pending appeal to the Texas appellate courts.  Id.  Notably, the State of Texas was not a party to the case.  The district court granted, and the appellate court affirmed, injunctive relief for Texaco.  Id. at 7-9.  The Supreme Court reversed.

The Supreme Court focused on the notion of comity:  "This concern mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."  Id. at 11.  The Supreme Court noted that its opinion "does not hold that *Younger* abstention is always appropriate whenever a civil proceeding is pending in a state court."  Id. at 14 n.12.  Nevertheless, the Court applied Younger to civil proceedings in which the state was not a party without setting clear guidelines.  As a consequence, "the lower courts will have to work out for themselves what limits, if any, there are on the sweep of Younger."  17B Fed. Prac. & Proc. Juris. § 4254 (3d ed. 2011).

7

Against this backdrop, the district court here applied the three-part Younger test: (1) was there an ongoing state proceeding, (2) did the proceeding implicate important state interests, and (3) did the state proceeding provided an adequate opportunity to raise federal claims. Nivens, 444 F.3d at 241 (addressing Younger in the context of state criminal proceeding but recognizing that Younger has been extended beyond criminal cases). As to the first factor, the district court determined that "it is undisputed that there is an ongoing state proceeding through which Defendant seeks documents from Plaintiff pursuant to FOIA. Thus, Plaintiff concedes that the first *Younger* factor is satisfied . . . ." J.A. 83. This is indeed undisputedly so, and the first Younger factor is clearly met.

Moving, for the moment, to the third Younger factor, i.e., whether the state proceeding provided an adequate opportunity to raise federal claims, the district court held that "Plaintiff is free to raise its First Amendment defenses in state court. Plaintiff's various alternative arguments may, likewise, be presented to the state court." J.A. 83. If this were in any way previously unclear, supplements to the joint appendix filed with this Court show that SCASA did in fact raise the very same First Amendment arguments underlying its federal complaint before the state court. In Disabato's state court action, SCASA moved to dismiss, arguing that Disabato's claim must fail

8

"because the FOIA's definition of a 'public body' cannot constitutionally embrace a corporation, like SCASA, engaged in political speech or issue advocacy. In other words, SCASA asserts that the FOIA's definition of 'public body' . . . unconstitutionally burdens the First Amendment rights of freedom of speech and association of issue advocacy organizations like SCASA." J.A. 108.

Notably, the state court granted SCASA's motion and dismissed Disabato's suit. The state court held that "the FOIA's open meeting and records disclosure requirements restrict SCASA's political speech and issue advocacy without a substantial relation to the purpose of the FOIA, and where narrower means are available to achieve the FOIA's purpose. As a result, the First Amendment prohibits the application of the FOIA's requirements to SCASA, and the Plaintiff's claim must fail . . . ." J.A. 119. Clearly, then, SCASA had an adequate opportunity to raise its First Amendment arguments before the state court, and the third Younger factor is met.

That leaves the second factor, i.e., whether the proceeding implicates important state interests. The district court concluded that "the state has significant interests in interpreting and applying FOIA, including with regard to entities such as Plaintiff which have mixed private and public attributes, the latter based on receipt of public funds and the

9

statutory assignment of duties." J.A. 83. Indeed, this case revolves around the interpretation and constitutionality of a state statute that the state legislature deemed "vital":

> The General Assembly finds that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy. Toward this end, provisions of this chapter must be construed so as to make it possible for citizens, or their representatives, to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings.

S.C. Code. Ann. § 30-4-15. And South Carolina's Attorney General has successfully intervened in the state suit at the appellate stage, stating that he has "a strong interest in defending the constitutionality of the application of FOIA . . . ." J.A. 123. Under these circumstances, we cannot say that the district court abused its discretion in abstaining from SCASA's federal suit in favor of the earlier-filed state action.[2]

SCASA points out that there are some exceptions to Younger abstention. The Supreme Court has indeed indicated that federal

---

[2] We note that the district court also ruled that "[a]t least to the extent [SCASA] argues that state law is vague, [Railroad Comm'n of Tx. V. Pullman, 312 U.S. 496 (1941)] abstention also applies." J.A. 83 (footnote omitted). Because we affirm the district court's abstention under Younger, we need not address whether abstention under Pullman would also have been appropriate.

10

courts need not abstain under "extraordinary circumstances" such as where a statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54 (quotation marks omitted). Abstention may also be inappropriate where there has been a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Id. at 54. SCASA contends that these exceptions apply here. We cannot agree.

As to the first exception, SCASA seeks, with its complaint, a declaration that "the FOIA violates the First Amendment and is unconstitutional in so far as its definition of public body encompasses private corporations engaging in political speech and issue advocacy . . . ." J.A. 12. This limited declaration essentially concedes that the SC FOIA is not "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54 (quotation marks omitted).

As to the second exception, SCASA claims that it has been pursued by political forces, including former Governor Sanford, under the SC FOIA, and that Disabato's attorneys in this case have repeatedly represented its challengers. What SCASA has

11

not, and apparently cannot, argue, however, is that Disabato has repeatedly brought SC FOIA suits against it. (This appears to be his first such challenge against SCASA.) SCASA does not contend that Disabato is a straw man for another party who has previously brought SC FOIA claims against it. And SCASA cites no support for the notion that looking to the lawyers instead of the parties is appropriate in evaluating its harassment contention; under the circumstances of this suit, we decline to do so.

## III.

In sum, SCASA has already obtained the relief it sought with this federal suit through its participation in an earlier-filed state suit.[3] The district court did not abuse its discretion in determining that abstention in favor of that state suit was appropriate under <u>Younger</u>. We therefore affirm the district court's dismissal of SCASA's federal complaint.

<u>AFFIRMED</u>

---

[3] We express no opinion as to the merits of SCASA's First Amendment claims.

12