**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2289**

THE COUNTRY VINTNER OF NORTH CAROLINA, LLC,

        Plaintiff – Appellant,

    v.

E & J GALLO WINERY, INC.,

        Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:09-cv-00326-BR)

Argued: October 25, 2011        Decided: January 6, 2012

Before DAVIS, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Davis and Judge Keenan joined.

**ARGUED:**   Stephen Donegan Busch, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant.  Michael Keith Kapp, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Lisa M. Sharp, Kevin J. O'Brien, MCGUIREWOODS LLP, Richmond, Virginia; Justin D. Howard, MCGUIREWOODS LLP, Raleigh, North Carolina, for Appellant.  Jonathan R. Bumgarner, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

We consider in this case whether, under the North Carolina Wine Distribution Agreements Act,[1] ("Wine Act" or "Act") a wine wholesaler's contractual right to distribute an imported wine survives a change in the winery that imports the brand. The district court declined to abstain from resolving this issue in favor of a state court proceeding, and held that Appellant's distribution rights did not survive a change in importers. The district court also dismissed Appellant's separate claim under the North Carolina Unfair and Deceptive Trade Practices Act. We affirm.

I.

Bodegas Esmeralda is a foreign winery that produces Alamos, an Argentinean brand of wine. Prior to January 2009, Billington Imports was the primary American importer and source of supply for Alamos in the United States. In July 2005, Billington selected The Country Vintner of North Carolina, LLC as its exclusive North Carolina wholesaler for Alamos.

---

[1] N.C. Gen. Stat. §§ 18B-1200-18B-1216. We construe and apply the statute as it existed in 2008 and 2009, the period during which the relevant conduct occurred and the ensuing litigation commenced.

Bodegas subsequently ended its relationship with Billington and retained E & J Gallo Winery, Inc. as its new importer and primary American source of supply for Alamos. Effective January 1, 2009, Gallo began supplying Alamos to its network of wholesalers in North Carolina, which did not include Country Vintner.

Displeased with this turn of events, Country Vintner first sought administrative relief before the North Carolina Alcoholic Beverage Control Commission ("Commission"), and later sued Gallo in state court. Country Vintner's complaint asserted three claims under the Wine Act: unlawful termination or failure to renew without notice, unlawful termination or failure to renew without good cause, and illegal dual distributorships. Country Vintner also filed a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), seeking compensatory and treble damages.

Gallo removed the action to the district court and moved to dismiss. In response, Country Vintner asked the district court to abstain from hearing the case in favor of a North Carolina state court proceeding.

The district court declined to abstain and denied Gallo's motion to dismiss the Wine Act claims. The court did, however, grant Gallo's motion to dismiss the UDTPA claim, finding that

Gallo's conduct was at most a violation of the Wine Act that, without more, did not constitute a UDTPA violation.

Following discovery, the parties filed cross-motions for summary judgment on the Wine Act claims. The district court granted summary judgment in Gallo's favor. Country Vintner timely appealed.

II.

We review a district court's refusal to abstain for abuse of discretion. Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). "A district court abuses its discretion whenever its decision is guided by erroneous legal principles." Martin v. Stewart, 499 F.3d 360, 363 (4th Cir. 2007) (internal quotation marks omitted).

We review de novo a district court's ruling on a motion to dismiss, assuming all well-pleaded facts to be true and drawing all reasonable inferences in favor of the nonmoving party. Nemet Chevrolet, Ltd. v. Consumersaffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). We also review de novo a grant or denial of summary judgment, applying the same standard applied by the district court. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 938 (4th Cir. 1991).

III.

We address first Country Vintner's argument that the district court abused its discretion when it declined to abstain from hearing the case. We begin by emphasizing that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). In this case, the district court considered the Supreme Court's seminal opinions governing federal court abstention in Burford v. Sun Oil Co., 319 U.S. 315 (1943), and La. Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959), and concluded, we think correctly, that it need not abstain.

Abstention under Burford is appropriate only when:

[F]ederal adjudication would "unduly intrude" upon "complex state administrative processes" because either: (1) "there are difficult questions of state law . . . whose importance transcends the result in the case then at bar"; or (2) federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Martin, 499 F.3d at 364 (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361-63 (1989)). Further, federal "[c]ourts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." Id.

5

This "balance only rarely favors abstention." Quackenbush, 517 U.S. at 726.

Abstention under Thibodaux is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976). Thibodaux permits abstention in diversity cases where state law is unsettled and "an incorrect federal decision might embarrass or disrupt significant state policies." Nature Conservancy v. Machipongo Club, Inc., 579 F.2d 873, 875 (4th Cir. 1978).

According to Country Vintner, this case satisfies the abstention doctrines under both Burford and Thibodaux. Country Vintner contends that the case "undoubtedly presents a difficult question of state law," a "state court decision would transcend the case at bar," and "a federal court's misinterpretation of the Wine Act would disrupt North Carolina's effort to establish a coherent policy of alcoholic beverage regulation." Appellant's Br. 50-51. The district court, however, undertook a detailed analysis of Burford and Thibodaux and found that neither case compelled abstention under these circumstances.

Specifically, the district court determined that Burford abstention was unwarranted because (1) this case did not present

any constitutional questions, (2) the Wine Act was unambiguous, (3) "interpreting the provisions of the Wine Act would not unduly intrude upon 'complex state administrative processes' or disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern,' " J.A. 58 (quoting Martin, 499 F.3d at 364), and (4) the "Wine Act does not contain a complex regulatory scheme," id. The district court further concluded that abstention under Thibodaux was not appropriate, because "applying the Wine Act to the facts in this case would not disrupt significant state policies or impede on North Carolina's sovereign prerogative to regulate alcohol." Id. at 59-60.

We believe the district court's analysis was correct, and we certainly can discern no abuse of discretion. On that score, the district court was interpreting a straightforward regulatory scheme that had not been the subject of much controversy in prior state or federal cases. Further, it carefully distinguished prior cases in which we held that abstention was appropriate and found that the circumstances here were inapposite. Moreover, a 2010 amendment to the Wine Act makes it unlikely that the question presented in this appeal is likely to recur. In sum, Country Vintner has failed to overcome the heavy deference we accord district courts in deciding whether to

abstain from hearing a case. Accordingly, we affirm the district court on this issue.

IV.

We turn now to the district court's dismissal of Country Vintner's UDTPA claim. Here, the district court reasoned that the cause of action was essentially a Wine Act claim packaged in UDTPA language, "which without anything more, does not rise to the level of egregious or aggravating conduct required to establish a violation of [the UDTPA]." J.A. 65 (construing Allied Distribs., Inc. v. Latrobe Brewing Co., 847 F. Supp. 376, 379-80 (E.D.N.C. 1993) (noting that a violation of the Beer Franchise Law alone was not enough to support a UDTPA claim)).

Country Vintner is certainly correct that the violation of a North Carolina regulatory statute governing business activities may also constitute an unfair or deceptive trade practice as a matter of law. See Walker v. Fleetwood Homes of N.C., Inc., 653 S.E.2d 393, 398-99 (N.C. 2007). Additionally, the violation of such a regulatory statute may be evidence of an unfair or deceptive trade practice, even if it is not a per se violation of the UDTPA. Id. at 399. Nevertheless, because we agree with the district court that Gallo did not violate the Wine Act, a UDPTA claim premised on those same facts cannot survive. See, e.g., Allied Distribs., Inc., 847 F. Supp. at 380

8

(concluding that, where the substantive claim failed under the Beer Franchise Law, the UDTPA claim premised on the same facts, without any separate "factual basis for a Chapter 75 claim upon which this court could find an unfair trade practice," also failed).

Country Vintner nevertheless contends that it has pleaded a UDTPA claim even absent a Wine Act violation. According to Country Vintner, its initial discussions with Gallo deceived it into believing that Gallo would honor Country Vintner's distribution agreement with Billington. Specifically, Country Vintner alleges that (1) Gallo knew that Country Vintner had an existing exclusive distribution agreement in North Carolina when Gallo secured the right to supply the Alamos brand, (2) Gallo did not inform Country Vintner when it first became the primary American source of supply for Alamos, and (3) Gallo unilaterally appointed new wholesalers to distribute Alamos in North Carolina without informing Country Vintner.

The district court carefully considered these allegations and determined that they were merely repackaged Wine Act claims. We agree, in no small part because the allegations presuppose that Gallo was under some obligation to conduct its business in a way that would have been more favorable to Country Vintner. Because we are satisfied that Gallo had no such obligation, we affirm the district court's dismissal of the UDTPA claim.

9

V.

Finally, we consider the grant of summary judgment in favor of Gallo on the Wine Act claims. The question presented here is--as the district court aptly summarized--whether "a wholesaler's agreement to distribute an imported brand survives a change in the winery that imports the brand." Country Vintner of N.C. LLC v. E. & J. Gallo Winery, Inc., No. 509CV326BR, 2010 WL 4105455, at *3 (E.D.N.C. Oct. 18, 2010) (internal quotation marks omitted).

The Wine Act was enacted in 1983 "[t]o promote . . . the continuation of wine wholesalerships on a fair basis," "[t]o protect wine wholesalers against unfair treatment by wineries," and "[t]o provide wine wholesalers with rights and remedies in addition to those existing by contract or common law." N.C. Gen. Stat. § 18B-1200(b)(1)-(3). The Act directs reviewing courts to construe and to apply its provisions "liberally . . . to promote its underlying purposes and policies." Id. § 18B-2000(a).

The Wine Act favors the continuation of wholesalers' rights to distribute wine when an agreement exists between a wholesaler and a winery. The Wine Act defines an "agreement" as "a commercial relationship between a wine wholesaler and a winery." Id. § 18B-1201(1). Agreements need not be in writing and may be of definite or indefinite duration. Id. Further, the Wine Act

10

provides that "[a]ny of the following constitutes prima facie evidence of an 'agreement' ":

> a.   A relationship whereby the wine wholesaler is granted the right to offer and sell a brand offered by a winery;
> b.   A relationship whereby the wine wholesaler, as an independent business, constitutes a component of a winery's distribution system;
> c.   A relationship whereby the wine wholesaler's business is substantially associated with a brand offered by a winery;
> d.   A relationship whereby the wine wholesaler's business is substantially reliant on a winery for the continued supply of wine;
> e.   The shipment, preparation for shipment, or acceptance of any order by any winery or its agent for any wine or beverages to a wine wholesaler within this State;
> f.   The payment by a wine wholesaler and the acceptance of payment by any winery or its agent for the shipment of any order of wine or beverages intended for sale within this State.

Id.

When an agreement exists between a wholesaler and a winery, a winery may terminate it only for good cause. Id. § 18B-1204. Further, the winery must "provide a wholesaler at least 90 days prior written notice of any intention to amend, terminate, cancel, or not renew any agreement"; a wholesaler may then rectify any reasons for termination stated in the notice, or seek a good cause determination before the Commission when the reasons for termination relate to conditions that the wholesaler cannot rectify. Id. § 18B-1205(a)-(c).

11

In limited circumstances, the Act protects a wine wholesaler even in the absence of an agreement. Specifically, section 18B-1206 governs the transfer of a wine wholesaler's business. When that occurs, a winery may not "unreasonably withhold or delay consent to [the] transfer," provided that "the wholesaler to be substituted meets the material and reasonable qualifications and standards required of the winery's wholesalers." Id. § 18B-1206(a). Section 18B-1213 addresses the sale of a winery, and obligates the purchaser of the winery to comply with "all the terms and conditions of an agreement in effect on the date of the purchase . . . , except for good cause." Id. § 18B-1213. Under this provision, the acquirer stands in the shoes of its predecessor and remains bound to honor any preexisting agreements with wine wholesalers.

Applying the statutory text, the district court considered whether an agreement existed between Gallo and Country Vintner. The court noted that the Act defines an agreement as a "commercial relationship," which, according to the court, "necessarily entails some form of commerce between the parties." Country Vintner, 2010 WL 4105455, at *3. The district court concluded that "the undisputed evidence shows that Gallo has never had a commercial relationship with Country Vintner." Id. at *4. We agree and similarly conclude that no agreement ever existed between Gallo and Country Vintner. Further, although

12

the Wine Act does not require an agreement in the context of a transfer of a wine wholesaler's business or an acquisition of a winery, neither circumstance is present here.

Resisting this rather straightforward application of the statute, Country Vintner insists that the Wine Act's protections for wholesalers extend to this situation, particularly given the liberal construction in favor of wholesalers that should be accorded the Act's terms. In effect, Country Vintner would have us conclude that Gallo stood in Billington's shoes and was required to honor Country Vintner's distribution agreement with Billington. Only this outcome, Country Vintner contends, is faithful to the letter and spirit of the statute.

Accepting this view of the Act, however, would require us to read into the text an additional exception to the default requirement of an "agreement" that is nowhere to be found. This reading, in turn, would obligate a winery that obtains the import rights of a wine brand to honor any extant agreements with wholesalers. As the district court noted, it is axiomatic under North Carolina law that " 'where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.' " Id. at *5 (quoting In re Estate of Lunsford, 610 S.E.2d 366, 372 (N.C. 2005)). In such a case, courts " 'are without power to interpolate, or superimpose, provisions and

13

limitations not contained' in the statute itself." Id. (quoting State v. Camp, 209 S.E.2d 754, 756 (N.C. 1974)).

The Wine Act clearly and unambiguously provides that, with two exceptions not applicable here, its protections apply only when an agreement exists between a wine wholesaler and a winery. In this case, Country Vintner was party to a distribution agreement with Billington but had no such agreement with Gallo. As a result, the Act offers no protection to Country Vintner on the facts alleged in its Complaint.

Although we need look no further, our conclusion is bolstered by the fact that, in 2010, the North Carolina General Assembly amended section 18B-1213 of the Wine Act specifically to grant (prospectively) the very type of protection that Country Vintner seeks in this case. As amended, the section now provides, "The purchaser of a winery, and any successor to the import rights of a winery, is obligated to all the terms and conditions of an agreement in effect on the date of the purchase or other acquisition of the right to distribute a brand, except for good cause." N.C. Gen. Stat. § 18B-1213. Because Gallo is the "successor to the import rights of a winery," it would be required to honor the agreement between Country Vintner and Billington if the amendment applied to this dispute.

We agree with the district court that the "amendment demonstrates that the North Carolina General Assembly knew how

14

to protect a wholesaler's right to the continued distribution of a brand, yet previously chose not to do so."[2] <u>Country Vintner</u>, 2010 WL 4105455, at *5. In that regard, North Carolina law teaches that "an amendment to an unambiguous statute indicates the intent to change [rather than clarify] the law . . . ." <u>Childers v. Parker's Inc.</u>, 162 S.E.2d 481, 483-84 (N.C. 1968). That conclusion is even more compelling where, as here, the legislature determined that the amendment would apply only prospectively. <u>See</u> <u>State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc.</u>, 299 S.E.2d 425, 429 (N.C. 1983) ("We also consider it significant that . . . the amendment shall not be applied retroactively. This is strong evidence that the legislature understood that the amendment occasioned a change in, rather than a clarification of, existing law.").

---

[2] Country Vintner also argues that the Wine Act should be read <u>in pari materia</u> with the Beer Franchise Law, which provides express protections for beer wholesalers in the face of a change in a brewery-importer. The crux of this argument is that, given the similar subjects sought to be regulated by the Wine Act and the Beer Franchise Law and the similar schemes enacted in North Carolina for the regulation of wine and beer, the protections for wholesalers in the Beer Franchise Law, including its protection for wholesalers when there is a change in brewery-importer, should apply to the Wine Act. However, far from persuading us to construe the statutes <u>in pari materia</u>, we view the express language in the Beer Franchise Law as further evidence that the North Carolina General Assembly knew how to provide this protection, but chose not to in the Wine Act until the effective date of the 2010 amendment.

15

Accordingly, we affirm the district court's grant of summary judgment in favor of Gallo on Country Vintner's Wine Act claims.

## VI.

In sum, (1) the district court acted well within its discretion when it refused to abstain from hearing the case in favor of a state court proceeding, (2) Country Vintner has not asserted a viable claim for relief under the UDTPA, and (3) the version of the Wine Act applicable to this dispute affords Country Vintner no relief on its statutory claims. Accordingly, we affirm the judgment of the district court.

<u>AFFIRMED</u>

16