**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 22-2271**

―――――――――

SCOTT SONDA; BRIAN CORWIN,

        Plaintiffs - Appellees,

    v.

THE WEST VIRGINIA OIL AND GAS CONSERVATION COMMISSION; RANDALL M. ALBERT, in his official capacity; HAROLD WARD, in his official capacity; MICHAEL MCCOWN, in his official capacity; ROBERT S. RADABAUGH, in his official capacity; JAMES A. MARTIN, in his official capacity,

        Defendants - Appellants,

    and

PATRICK MORRISEY, in his capacity as Attorney General of the State of West Virginia,

        Defendant.

―――――――――

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:22-cv-00124-JPB)

―――――――――

Argued:  December 7, 2023                    Decided:  January 31, 2024

―――――――――

Before DIAZ, Chief Judge, NIEMEYER, Circuit Judge, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

―――――――――

Reversed and remanded with instructions by published opinion.  Judge Niemeyer wrote the opinion, in which Chief Judge Diaz and Judge Alston joined.

―――――――――

**ARGUED:** Jonathan Zak Ritchie, HISSAM FORMAN DONOVAN RITCHIE PLLC, Charleston, West Virginia, for Appellants. James Anthony Edmond Jr., EDMOND & BAUM, PLLC, Wheeling, West Virginia, for Appellees. **ON BRIEF:** Andrew C. Robey, HISSAM FORMAN DONOVAN RITCHIE, PLLC, Charleston, West Virginia, for Appellants. Michael B. Baum, EDMOND & BAUM, PLLC, Wheeling, West Virginia, for Appellees.

NIEMEYER, Circuit Judge:

Scott Sonda and Brian Corwin, who own mineral interests underlying multiple parcels of land in West Virginia, commenced this action against the West Virginia Oil and Gas Conservation Commission (the "Commission"), challenging West Virginia Senate Bill 694, which became effective June 7, 2022. The Bill amended the State's oil and gas conservation law, W. Va. Code Ann. §§ 22C-9-1 to 22C-9-16, primarily by adding § 22C-9-7a, which authorizes for the first time the "unitization of interests in *horizontal* well drilling units" even as to nonconsenting mineral rights owners. (Emphasis added). Unitization refers to the combining of separately owned mineral tracts in order to form a single operating unit overlapping all or part of a common source of oil or gas, W. Va. Code Ann. § 22C-9-7a(b)(8), and horizontal drilling is defined to mean drilling where "the wellbore is initially vertical but is eventually curved to become horizontal, or nearly horizontal, to be in a particular geologic formation," *id.* § 22C-9-2(a)(7).

In their amended complaint, Sonda and Corwin alleged, among other things, that the new law ("SB 694") constitutes a taking of their property and deprives them of property without due process of law, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution. The Commission filed a motion to dismiss the amended complaint, contending with respect to the plaintiffs' federal constitutional claims (1) that Sonda and Corwin lacked standing, (2) that the Commission was immune under the Eleventh Amendment, and (3) that the amended complaint failed to state a claim upon which relief could be granted.

3

The district court did not, however, address any of the grounds advanced by the Commission. Instead, it decided sua sponte to abstain from ruling on the federal constitutional claims, relying on the doctrine established in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), "so that plaintiffs may present their state law issues to state court," observing that "the West Virginia constitutional provision is not 'broad and sweeping,' but rather is directly germane to the issues presented in this case." The court did not identify the West Virginia constitutional provision that it had in mind, nor did it identify any state law issue on which the Commission's motion to dismiss the federal constitutional claims would turn. The court also ordered that the proceeding on the federal constitutional claims be stayed pending the outcome of a state court action that the plaintiffs *may* file.

The Commission appealed the district court's abstention order, and, for the reasons given herein, we reverse the district court's order and remand for further proceedings. We also direct that the district court address *first* the Commission's argument challenging the plaintiffs' Article III standing.

I

Prior to the enactment of SB 694, West Virginia law addressed the production of oil and gas from *vertical* wells of sufficient depth. It empowered the West Virginia Oil and Gas Conservation Commission to establish drilling units for deep well oil and gas production and to pool two or more mineral tracts to create such units. *See* W. Va. Code Ann. § 22C-9-7. The purpose of those procedures was to facilitate the development of

4

particular oil or gas reservoirs and thereby increase the efficiency of oil or gas production from such sources. *See Ascent Res. – Marcellus, LLC v. Huffman*, 851 S.E.2d 782, 785 n.2 (W. Va. 2020) (explaining the difference between pooling and unitization).

With the enactment of SB 694, West Virginia added the new § 22C-9-7a provision to its oil and gas conservation law to provide new procedures regarding the production of oil and gas from *horizontal* wells. In particular, the new law provides a mechanism for compulsory unitization of nonconsenting owners' mineral tracts, allowing an operator to apply to the Commission for an order allowing the development of an oil or gas reservoir with a horizontal well unit without the consent of all mineral owners. *See* W. Va. Code Ann. § 22C-9-7a(c). The law also specifies a method for calculating the compensation to nonconsenting mineral owners. *See id.* § 22C-9-7a(f)(6)–(7). In addition, it alters the definition of a "just and equitable" compensation as contained in the prior law.

More particularly, before the enactment of SB 694, West Virginia law provided that mineral owners receive a "just and equitable share of production," which was defined to mean "the amount of recoverable oil and gas in that part of a pool underlying the person's tract or tracts." W. Va. Code Ann. § 22C-9-2(a)(16) (2012). With the enactment of SB 694, however, "just and equitable production" was redefined to mean "the amount of recoverable oil and gas in that part of a pool, *unit, or unconventional reservoir* in the person's tract or tracts within a unit." *Id.* § 22C-9-2(a)(10) (eff. June 7, 2022) (emphasis added). This change, according to Sonda and Corwin, dilutes the value of their mineral interests without their consent. They commenced this action to challenge SB 694's legality.

5

In their amended complaint, Sonda and Corwin alleged in five counts that the provisions of SB 694 violate their Fifth Amendment right against the taking of property without just compensation (Count I); their Fourteenth Amendment right against a State's deprivation of property without due process (Count II); their rights under the West Virginia Constitution prohibiting the taking of property and the deprivation of property without due process (Count III); their rights under both the U.S. Constitution and the West Virginia Constitution not to be subject to ex post facto laws (Count IV); and their rights under the federal antitrust laws (Count V). In addition, they alleged at some length facts to demonstrate how they had standing to bring their claims. They asserted that they owned various oil and gas interests under various properties, some of which are subject to oil and gas leases and others of which are not. They alleged that the enactment of SB 694 changes the nature of their ownership interests and, as well, subjects them to oil and gas production of their interests without their consent and with diluted compensation. They sought declaratory and injunctive relief.

The Commission filed a motion to dismiss all counts, contending that Sonda and Corwin lacked standing to bring the action; that the Commission was subject to Eleventh Amendment immunity; and that the amended complaint failed to state claims upon which relief could be granted.

By order dated December 1, 2022, the district court granted the Commission's motion to dismiss Counts III, IV, and V. It did not, however, address any of the Commission's arguments made in support of its motion to dismiss Counts I and II, including the Commission's lack-of-standing argument. Instead, the court, sua sponte,

6

decided with respect to those counts to abstain from deciding the motion to dismiss, relying on the *Pullman* abstention doctrine. It stated:

> The above [dismissal of Counts III, IV, and V] leaves Counts I and II. It appears to this Court, however, that this might be an appropriate case for this Court to abstain. . . . The facts and law of this case satisfy the criteria initially set forth in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

After reviewing decisional law applying *Pullman*, the court then explained its decision to abstain as to Counts I and II, stating, in total:

> In the present case, the West Virginia constitutional provision is not "broad and sweeping," but rather is directly germane to the issues presented in this case.
>
> For the reasons stated above, this Court will abstain from ruling on the issues presented by this case. This action will be stayed so that plaintiffs may present their state law issues to state court. In the event that the state courts do not resolve this case under state law, plaintiffs will be permitted to seek a ruling on the federal issues in this Court.

From the district court's order dismissing the amended complaint in part and abstaining in part, the Commission filed this appeal.

II

While the district court's December 1, 2022 order dismissed three counts of the amended complaint, it abstained from ruling on the remaining two counts, purportedly leaving the case open, subject to the contingencies of its abstention order. In view of these circumstances, Sonda and Corwin contend as an initial matter that we lack jurisdiction to hear the Commission's appeal because the "District Court's order to stay [does not] constitute[] a final order under 28 U.S.C. § 1291 as it does not put Appellants effectively out of court." They contend further that the district court's order is also not appealable as

a "collateral order." *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996). The Commission contends otherwise as to both grounds.

Section 1291 confers jurisdiction on courts of appeals over "appeals from all final decisions of the district courts of the United States," 28 U.S.C. § 1291, and the "usual rule" is that a stay order "is not ordinarily a final decision for purposes of § 1291," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983). The Supreme Court has, however, recognized a limited exception "where (under . . . abstention[] or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum." *Id.*; *see also Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962) (per curiam). The Court explained that in such cases, an abstention stay order effectively puts the parties out of court — *i.e.*, "effectively out of *federal* court." *Moses H. Cone*, 460 U.S. at 9 n.8. Thus, a party who objects to such a stay may "appeal . . . [the district court's] refusal to exercise *federal* jurisdiction." *Id.* In addition, the Court has explained that it does not matter whether the stay order anticipated an ultimate return to federal court or the possibility that the state-court ruling would have preclusive effect on any subsequent post-stay federal proceeding. *See id.* at 10. For either circumstance, the Court explained that a *Pullman* abstention order can be a "final decision" for the purposes of § 1291 because such "a stay order is final when the sole purpose and effect of the stay is precisely to surrender jurisdiction of a federal suit to a state court." *Id.* at 10 n.11.

In this case, the district court's abstention order is just the type of order that *Moses H. Cone* and *Idlewild* held appealable. The district court stated that it was abstaining from

8

ruling on the federal issues presented and staying the action "so that plaintiffs [could] present their state law issues to state court." That order thus "require[d] all or an essential part of the federal suit to be litigated in a state forum," potentially with preclusive effects, thereby effectively putting the parties out of federal court. *Moses H. Cone*, 460 U.S. at 10 n.11. Accordingly, we conclude that the order was "final" and that therefore we have jurisdiction to review it at this point in the litigation.

We note, moreover, that the *Moses H. Cone* Court instructed that such abstention orders of the kind entered by the district court in this case are also appealable under the collateral order doctrine. *See* 460 U.S. at 11 (citing *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949)). Accordingly, we also reject Sonda and Corwin's argument grounded on that reason.

This appeal does present an unusual twist in that the plaintiffs below would usually be the ones aggrieved by a *Pullman* abstention order, asserting on appeal that the order obstructed their path to judicial relief and therefore gave them standing to appeal. *See Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980) (noting that "only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom"). Yet, in this case, the Commission is the party challenging the order. Nonetheless, we conclude that the Commission too has a sufficient interest in this appeal because the district court's stay order also obstructed its path to resolving the constitutional challenge to SB 694 *in federal court*, where the Commission would prefer to raise its defenses to federal constitutional claims.

9

III

For its substantive challenge to the district court's abstention order, the Commission contends that the court abused its discretion in abstaining and indefinitely staying this case, arguing that the order did not satisfy the requirements for a *Pullman* abstention order. The Commission argues:

> [T]he District Court's brief explanation for *sua sponte* abstaining under *Pullman* does not satisfy the rigorous factors necessary to refuse to exercise federal jurisdiction. There has been no unclear issue of state law identified below, much less one the resolution of which would be potentially dispositive of the remaining claims. The District Court should therefore have . . . adjudicated Appellants' federal defenses.

We agree.

The generally applicable rule is that a federal court, whose jurisdiction has been invoked, *must* exercise that jurisdiction and address the matter before it. The Supreme Court, as well as this court, has repeatedly instructed that this is the federal court's "strict duty." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush*, 517 U.S. at 716). Indeed, the Supreme Court has emphasized that this duty is a "virtually unflagging obligation." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). And federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C.J.).

There is, however, "an extraordinary and narrow exception" to this duty when abstention is justified by the relevant circumstances, as for example, under the abstention

10

doctrine articulated in *Pullman*. *Quackenbush*, 517 U.S. at 728 (cleaned up). The *Pullman* exception may be applied when "there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020) (en banc) (quoting *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983)).

The district court, however, applied the *Pullman* abstention doctrine without adhering to these important limitations. The court summarily concluded that "the West Virginia constitutional provision is not 'broad and sweeping' but rather is directly germane to the issues presented in this case." And after this oblique reference to the West Virginia Constitution, the court then stated simply that it would stay the case so that the plaintiffs "may present their state law issues to state court." The Court did not, however, identify the unclear issue of state law relevant to the dismissal of Counts I and II, which presented claims under the U.S. Constitution. And it did not explain how state law implicated the resolution of the plaintiffs' federal claims in those counts, neither of which were based on the West Virginia Constitution. The parties were left with no guidance as to which state constitutional provision the court had in mind or why abstention would help in the resolution of the federal constitutional issues.

Because the district court legally erred in applying the requirements for *Pullman* abstention, we conclude that it abused its discretion in entering its *Pullman* abstention order.

11

In addition, the district court erred by entering a *Pullman* abstention order without first addressing whether it had subject-matter jurisdiction. Not only did it have an independent obligation to satisfy itself of its jurisdiction, but the Commission also raised the issue in its motion to dismiss, alleging that plaintiffs' lacked Article III standing, as we discuss in Part IV.

Accordingly, we reverse the district court's order abstaining from ruling on Counts I and II of the amended complaint.

IV

In its motion to dismiss the plaintiffs' amended complaint, the Commission argued that the plaintiffs failed to allege sufficient facts to demonstrate that they had Article III standing to bring their action. It contended, "Absent allegations of a concrete and particularized injury — or, at a minimum, allegations of an impending injury or substantial risk of harm — Plaintiffs' claims must be dismissed for lack of Article III standing."

In responding to the Commission's motion, the plaintiffs highlighted several circumstances that they contended showed how the enactment of SB 694 had adversely affected them so as to give them standing. They pointed to the facts that they owned

> [o]il and [g]as interest[s] in Units including, but not limited to, the Sam Jones South Unit, Larry Ball North Unit, and Thelma Hays North Unit. As stated in lines 59 and 60 of Plaintiffs' Complaint, the former law allowed Plaintiffs a remedy to not receiving their just and equitable share of production "as to each person, an amount of oil or gas or both substantially equal to the amount of recoverable oil and gas in that part of a *pool* underlying the person's tract or tracts" [emphasis added]. SB 694 changes pertinent language from just and equitable share of production based on the pool alone to ". . . part of a pool, unit, or unconventional reservoir."

12

And they argued that, after SB 694 had gone into effect, it caused their "payments for oil and gas to be artificially diluted without proper recourse as the former law allowed." They also argued that "SB 694 changed the definition of what an individual is to receive. . . . This change results in the unlawful taking of property as described in the Plaintiffs' Amended Complaint."

The district court never addressed the standing issue argued by the parties. Yet, it should have done so in the first instance because standing goes to the jurisdiction of the court, and resolving the court's power is a prerequisite to any other ruling. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016).

Accordingly, on remand, we direct the district court to address the Commission's standing argument before addressing any other issue before it. We express no opinion about the merits of that issue or any others before the court.

REVERSED AND REMANDED WITH INSTRUCTIONS